LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiff Francisco Orozco*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ARMANDO VILLANUEVA and HORTENCIA SAINZ, individually and as successor in interest to Pedro Villanueva, deceased, and FRANCISCO OROZCO, individually,

Plaintiffs,

vs.

STATE OF CALIFORNIA; JOHN CLEVELAND; RICH HENDERSON; and DOES 1-10, inclusive,
Defendants.

Case No. 8:17−cv−01302 JLS (KESx)

**DECLARATION OF POLICE PRACTICES EXPERT SCOTT A. DEFOE IN SUPPORT OF PLAINTIFF FRANCISCO OROZCO'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[*Filed concurrently with Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities in support thereof; Declaration of Renee V. Masongsong and exhibits thereto; Declaration of David E. Balash; Declaration of Edward C. Fatzinger; Declaration of Francisco Orozco*]

Date: August 10, 2018
Time: 2:30 p.m.
Judge: Hon. Josephine L. Staton

**DECLARATION OF SCOTT A. DEFOE**

I, Scott DeFoe, declare as follows:

1. I am a police practices expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

3. My opinions are based in part on my training, professional experience and education. I am a twenty-year veteran of the Los Angeles Police Department. I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 commendations, including the Medal of Valor, Purple Heart, and Police Star.

4. My qualifications to review this case are set forth in detail on pages 19-22 of my Federal Rules of Civil Procedure, Rule 26 report, attached hereto as "Exhibit 1."

5. Before reaching my opinions in this case, I reviewed the deposition transcripts, tape-recorded interviews, photographs, body-cam footage, reports from the Fullerton Police Department, reports from the California Highway Patrol ("CHP"), CHP policies, Rule 26 report by Plaintiffs' expert David E. Balash, Rule 26 report by Plaintiffs' expert Edward C. Fatzinger, Declaration of Francisco Orozco, and other materials in this case as listed on pages 2-4 to my report.

6. At the time of the shooting of Pedro Villanueva and Francisco Orozco on July 3, 2016, Peace Officer Standards and Training ("POST") provided the following training with respect to the use of deadly force:

a. Deadly force is the highest level of force.

b. Deadly force can only be used as a last resort.

c. Deadly force can only be used in the direst of circumstances when

all other options have been exhausted and no other reasonable measures are available.

d. When feasible, a warning should be given before using deadly force.

e. Deadly force is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough.

7. In addition to the foregoing POST training, police officers are given the following basic police officer training with respect to the use of deadly force:

a. Deadly force can only be used in an "immediate defense of life situation"; in other words, in immediate defense of death or serious bodily injury.

b. The decision to use deadly force must be guided by the reverence for human life.

c. An officer must justify every shot he or she fires.

d. An overreaction in using deadly force is excessive force.

e. A warning that deadly force is to be used should be given when feasible.

8. In this case, Sgt. Cleveland and Officer Henderson were not responding to a serious crime. Sgt. Cleveland and Officer Henderson had no information that anyone had been injured and no information that the occupants of the Silverado were armed with any weapon.

9. As stated above, police officers are trained that deadly force is only justified on the basis of an "objectively reasonable"; a subjective fear is not enough. As it applies to this case, an officer's subjective fear that he or his partner officer may not be able to get out of the way of a moving vehicle is insufficient to justify shooting at the vehicle or its driver.

**Standards on Shooting at Motor Vehicles or their Drivers**

10. POST dictates that police officers should defer to their own Department's policies. CHP HPM 70.6 (CHP-01800), Policy on the Use of Firearms, states that "officers shall not stand and/or step directly in front of or directly behind a vehicle in an attempt to impede its movement (prevent escape), intentionally creating circumstances where the use of deadly force becomes necessary."

11. The CHP Policy on the Use of Firearms also dictates that "once an officer no longer perceives a threat, deadly force is no longer justified."

12. Officer Henderson and Sgt. Cleveland violated their own policy on the use of firearms, as well as basic police officer training that discourages shooting at moving vehicles, when they shot at the Silverado.

13. Per basic police training, when on foot, police officers should not position themselves or remain in the path of a moving motor vehicle. Additionally, police officers should not stop in a position directly in front of or behind a driver-occupied, stationary motor vehicle. Such positions are inherently unsafe.

14. Police officers are trained that shooting at a motor vehicle or its driver is inherently dangerous and almost always ineffective.

15. Per basic police training, an assaultive motor vehicle does not presumptively justify the use of deadly force.

16. Police officers are trained that if a vehicle appears to be coming in an officer's direction, that officer should try to get out of the path of that vehicle instead of discharging a firearm at the vehicle or its occupant(s), allow the vehicle to pass, and utilize other tactical or investigative means to apprehend the suspect.

17. Basic police training teaches that deadly force should never be used against a motor vehicle or its driver unless there is an individual about to be run over and there is no opportunity to get out of the way, which was not the case here. Sgt. Cleveland was not about to be run over by the Silverado, and he had ample time to get out of the path of the Silverado. The Silverado was travelling at a speed of

approximately three to five miles per hour at the time of the shots. According to Francisco Orozco, the Silverado travelled forward approximately two to three feet prior to the shots. According to Sgt. Cleveland, he was approximately 15-20 feet away from the Silverado and was moving to the west curb line when he fired his shots. The evidence also shows that the Silverado was approximately 15-20 feet from the CHP vehicle when the driver of the Silverado put the Silverado in drive after reversing onto Pritchard Avenue. The trajectory of the two gunshots to the passenger side of the Silverado indicates that Sgt. Cleveland was to the right of the Silverado—out of its path—at the time of the shooting.

18. One reason that shooting at the driver of a moving vehicle is discouraged is because shooting could disable the driver of the vehicle and cause the vehicle to go out of control or affect the driver's ability to continue to drive the vehicle safely. The evidence in this case indicates that the impact between the Silverado and the unmarked CHP vehicle was the result of the driver being shot and subsequently losing control of the Silverado.

19. Police officers are trained that a police officer cannot justify shooting at a moving vehicle simply because that vehicle was fleeing or trying to leave the area. Under the facts of this case, Sgt. Cleveland and Officer Henderson would not have been justified in shooting at the Silverado or its driver for fleeing.

**Pre-Shooting Negligent Tactics**

20. There was a gross lack of situational awareness and fundamental tactical errors in this incident. This includes that at the time of the shooting, Sgt. Cleveland and Officer Henderson should have known that a front-seat passenger occupied the Silverado. Independent witnesses observed a passenger in the front seat of the Silverado. Sgt. Cleveland was looking at the passenger side of the Silverado both when it was reversing onto Pritchard Avenue and also at the time of his shots. Sgt. Cleveland was also using a flashlight or TAC light at that time. After the shooting, Sgt. Cleveland could clearly see the front-seat passenger and could see that the front-

seat passenger had his hands up.

21. Sgt. Cleveland and Officer Henderson failed to establish Contact and Cover Officers prior to stopping their vehicle.

22. Sgt. Cleveland failed to formulate an effective and safe tactical plan to conduct a vehicle stop. Sgt. Cleveland and Officer Henderson should remained in their vehicle and waited for backup. Sgt. Cleveland and Officer Henderson understood that marked police vehicles and a police helicopter were *en route* to their location. Sgt. Cleveland and Officer Henderson should not have taken any enforcement action without waiting for backup because they were in an unmarked police vehicle, were wearing plainclothes, and had no tactical plan.

23. Sgt. Cleveland and Officer Henderson violated their own policy by conducting the vehicle stop in an unmarked vehicle and wearing plainclothes. CHP HPM 70.6, (CHP-01832-1833), Pursuit Units: Types of units involved, states that "a marked black and white patrol vehicle, other than a motorcycle, should take over a pursuit from an unmarked vehicle or Specially Marked Patrol Vehicle. This policy also states that "when practical, a marked black and white patrol vehicle with overhead emergency lights shall take over the pursuit from a patrol vehicle equipped with only a red spotlight or red spotlight/center mounted red light combination."

24. POST Learning Domain No. 22, Chapter 3: High Risk Vehicle Pullovers states that officers shall "use marked patrol vehicles to affect the vehicle pullover, if possible, to prevent recognition problems and ensure necessary equipment is available within the vehicle" and that "officers should wait for requested backup/assistance to arrive before taking action."

25. As stated above, officers are trained to give a warning prior to using deadly force. Neither Sgt. Cleveland nor Officer Henderson issued a warning prior to shooting, even though it would have been feasible to do so under the facts of this case.

26. The officers should have utilized the vehicle Public Address (PA) system to provide direction and commands to the occupants in the Silverado.

27. Officer Henderson and Sgt. Cleveland also failed to allow the occupants of the Silverado reasonable opportunity to comply prior to firing.

28. The officers displayed an unprofessional and callous attitude when they used profanity with the occupants of the Silverado truck.

29. From the standpoint of police practices—including basic police training, CHP policies, and POST standards—deadly force was improper, inappropriate, excessive and unreasonable, including (but not limited to) for the following reasons:

a) **No Immediate Defense of Life ("IDOL")**. Officers are trained that they can only use deadly force in an Immediate Defense of Life situation, in other words, when there is an immediate threat of death or serious bodily injury.

i. Sgt. Cleveland's Shots: There was no IDOL situation when Sgt. Cleveland fired his 2 shots because the evidence shows that Sgt. Cleveland was not about to be run over by the Silverado and was able to and in fact did get out of the way; therefore, he should not have shot. The Silverado was travelling at a speed of three to five miles per hour at the time of the shots, and according to Francisco Orozco, the Silverado had only moved forward approximately two to three feet when the shots started. Moreover, the physical and forensic evidence in this case shows that Sgt. Cleveland fired his shots into the passenger side of the Silverado when he was to the right of the Silverado, not in its path.

ii. Officer Henderson's Shots. Officer Henderson claims that he fired in defense of Sgt. Cleveland's life. There was no IDOL situation when Officer Henderson fired his 12 shots because Sgt. Cleveland was not about to be run over by the Silverado as set forth above.

b) **Not a last resort**. Officers are trained that they can only use deadly force in a "last resort" situation. Shooting was not the officers' "last resort"; other reasonable measures were available, including letting the Silverado drive by for later apprehension, and simply moving out of the way.

c) **Not the direst of circumstances**. Officers are trained that they can only use deadly force in the direst of circumstances. This was not the "direst of circumstances" for Sgt. Cleveland and Officer Henderson.

d) **No warning regarding deadly force**. Officers are trained to give a warning that deadly force will be used when feasible. Officer Henderson and Sgt. Cleveland both failed to issue a warning prior to using deadly force.

e) **Other reasonable options available**. The officers had less-than-lethal options available, including moving out of the way, waiting for backup, giving further commands, using the PA system, and allowing the Silverado to continue past the CHP vehicle for later apprehension by marked vehicles.

f) **Subjective fear is insufficient**. POST requires that any use of deadly force must be based on an "objective" rather than "subjective" "reasonable necessity" of action to "imminent danger." In this case, the record does not support any objectively reasonable explanation that the Silverado truck posed a credible lethal danger at the time that any of the shots were fired.

g) **No reverence for human life**. Officer Henderson and Sgt. Cleveland opened fire on the Silverado without knowing whether there were passengers in the Silverado. Shooting at the driver also showed no reverence for human life.

h) **No serious crime**. It is undisputed that the officers were not responding to a serious crime; the officers had no information that anyone in the Silverado was armed and no information that anyone had been injured.

i) **Failure to take cover**. A reasonable officer acting consistent with standard police practices and training would have remained in his police vehicle or taken cover instead of moving in an open-air environment that did not afford him cover or concealment. Sgt. Cleveland's testimony that he did not feel the need to take cover indicates that he was never in the path of the truck.

j) **Violation of training and department policy**. Officer Henderson and Sgt. Cleveland violated their own Department policy against shooting at moving vehicles, as well as basic police training discouraging shooting at moving vehicles or their occupants, when they shot at the Silverado rather than remaining in their police vehicles and waiting for backup, taking cover, or simply moving out of the way. The officers violated this policy because there was no one in the Silverado's path at any time that any of the shots were fired.

k) **Shooting at a moving vehicle**. The officers also violated basic police officer training regarding shooting at moving vehicles when they shot at the Silverado. If Sgt. Cleveland were ever in the path of the Silverado, then he violated basic police officer training when he placed himself in that position. Sgt. Cleveland should have moved out of the path of the Silverado, and in fact did move out of the Silverado's path; therefore, the shots by Sgt. Cleveland and Officer Henderson were unjustified.

30. Sgt. Cleveland and Officer Henderson failed to provide either occupant

of the Silverado with medical aid or attention after the shooting as trained by California Commission on Peace Officers Standards and Training, Basic Course Workbook Series Student Materials Learning Domain 34, "First Aid & CPR."

a. Officers are trained that when a situation involves a medical emergency, the officer assumes the role of First Responder. As a First Responder, the officer has responsibility to initiate actions regarding the well-being and care of injured persons. Officers are trained to check the victim for life threatening injuries such as major bleeding and not move a victim unless it is absolutely necessary. They are also charged with controlling any bleeding by applying direct pressure on the site of injury until the bleeding is controlled. Shock is life threatening and should also be treated.

30. A reasonable police officer in the position of Sgt. Cleveland and Officer Henderson would not have found it necessary to handcuff the passenger Francisco Orozco. After the shooting, Mr. Orozco was obviously injured. Mr. Orozco was also compliant after the shooting. Mr. Orozco was not driving the Silverado and had committed no violations himself. According to Mr. Orozco, he was handcuffed behind his back notwithstanding having been shot in the right elbow, and he remained handcuffed for several minutes while waiting for the ambulance and also during the transport to the hospital.

I declare under penalty of perjury that the foregoing is true and correct, and that this was executed this 11th day of July 2018 at Huntington Beach, California.

[signature]
Scott DeFoe