_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                              Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

  Terry Guerrero                                                    N/A
Deputy Clerk                                                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

        Not Present                                         Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Doc. 33)**

     Before the Court is a Motion for Summary Judgment brought by Defendants
Officer Rich Henderson, Sergeant Jon Cleveland, and the State of California.  (Mot.,
Doc. 33.)  Two oppositions were filed; one by Plaintiffs Armando Villanueva and
Hortencia Sainz, and one by Plaintiff Francisco Orozco.  (Villanueva Opp., Doc. 42;
Orozco Opp., Doc. 51.)  Defendants replied.  (Reply, Doc. 69.)[1]  After considering the
briefs, holding oral argument, and taking the matter under submission, the Court
GRANTS in part and DENIES in part Defendants' Motion.

## I.    BACKGROUND

     This suit is brought by Pedro Villanueva's parents, Armando Villanueva and
Hortencia Sainz, individually and on behalf of their son,[2] and Francisco Orozco.  Both

_____
[1] The parties also identified numerous, largely boilerplate evidentiary objections.  In such
instances, it is "unnecessary and impractical for a court to methodically scrutinize each objection
and give a full analysis of each argument raised."  *Doe v. Starbucks, Inc.*, No. SACV 08–0582
AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  To the extent that the Court
relies on objected-to evidence, the relevant objections are overruled.  *Capitol Records, LLC v.
BlueBeat, Inc.*, 765 F. Supp. 2d 1198, n. 1 (C.D. Cal. 2010).
[2] For ease of reference throughout, the Court will refer to Pedro Villanueva as "Villanueva" and
Armando Villanueva and Hortencia Sainz as "Villanueva's parents."

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                              Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

Villanueva and Orozco were shot by Defendants Henderson and Cleveland; Villanueva died from his wounds, but Orozco survived.

### A.  Before the Shooting

On July 3, 2016, Sergeant Cleveland and Officer Henderson were assigned to a street racing and "sideshow" [3] detail comprised of uniformed California Highway Patrol (CHP) officers driving marked patrol vehicles and plain clothes officers driving unmarked patrol vehicles.  (Villanueva's Parents Statement of Undisputed Facts ("UF") ¶ 1, Doc. 42.)  Cleveland and Henderson were wearing plain clothes and black tactical body armor vests with police insignia and lettering in gold.  (*Id.* ¶ 4.)  They were driving an unmarked black Ford Taurus equipped with a CHP radio system, siren, and a steady red and flashing blue LED light that was suction mounted onto the dashboard and flashing blue and amber LED lights that were mounted to the rear of the vehicle.  (*Id.* ¶ 5.)  Cleveland was driving the Ford Taurus, and Henderson was the passenger.  (*Id.* ¶ 6.)

At about 10:35 p.m., Cleveland and Henderson followed a group of vehicles to the Santa Fe Springs Swap Meet parking lot.  (*Id.* ¶ 8.)  There were no marked CHP units in the area to assist with enforcement.  (*Id.*)  There were approximately twenty cars in the parking lot participating in a sideshow.  (*Id.*; Plaintiffs' Additional Undisputed Material Facts ("AUMF") ¶ 59.)  Villanueva was in the parking lot driving a red Chevrolet Silverado pick-up truck, with Orozco as his passenger.  (AUMF ¶¶ 47–48.)  Upon witnessing Villanueva engaging in an unsafe or illegal maneuver, Cleveland and Henderson decided to enter the parking lot to follow the truck until marked units arrived to conduct a traffic stop.  (UF ¶ 10; Cleveland Dep. ¶¶ 57:4–6, Doc. 43-1; Henderson Dep. ¶¶ 28:2–9, Doc. 43-1.)

As Cleveland and Henderson entered the parking lot without a siren or lights activated, an unknown car started honking and Villanueva drove toward the exit of the parking lot where Henderson and Cleveland had just entered.  (UF ¶ 11.)  Cleveland

---

[3]  A sideshow is an event where attendees perform various unsafe and illegal driving maneuvers, such as speeding, "donuts," or "burnouts" in close proximity to bystanders.  (UF ¶ 2.)

---

**CIVIL MINUTES – GENERAL**                                                      2

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                     Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

drove behind Villanueva and, while Cleveland claims he activated a red and blue flashing light and chirping police siren, Orozco testified that the light was a forward-facing flashing orange light and the siren was a short "screeching" noise not typical of a police siren.  (UF ¶ 12; Orozco Dep. ¶¶ 50:15–23, 51:23–54:1, 56:16–20, Doc. 51-11.)  Orozco claims Villanueva proceeded to the exit without making any turns, whereas Defendants claim that Villanueva hit a median and then began backing up towards their car and that they had to reverse in order to avoid being hit by Villanueva.  (Orozco Dep. ¶ 53:4–54:5; UF ¶ 13.)  Villanueva exited the parking lot at a speed between fifty and seventy miles per hour and Cleveland and Henderson followed.  (UF ¶ 14.)

After Villanueva and Orozco left the lot, Henderson and Cleveland turned off the lights and siren to avoid pursuing the truck in an unmarked vehicle.  (*Id.*  ¶¶ 15–16.)  Cleveland and Henderson planned on maintaining surveillance on the car while waiting for backup.  (*Id.* ¶ 16.)  Henderson advised CHP dispatch that they were following a speeding truck and requested assistance from a marked CHP vehicle.  (*Id.* ¶ 17.)  Cleveland continued to follow Villanueva and Orozco at a distance – whether it was a quarter of a mile away or closer is disputed – as they waited for a marked police unit to arrive.  (*Id.* ¶ 18.)  Villanueva ran at least three red lights and reached estimated speeds of seventy miles per hour on surface streets.  (*Id.* ¶ 19.)  While following Villanueva, Cleveland used the emergency lights and siren only to clear some intersections before going through them; otherwise the lights and siren were off.  (*Id.* ¶ 20.)

At about 10:47 p.m., after Cleveland had followed the truck for several minutes, the truck turned north onto North Pritchard Avenue.  (*Id.* ¶ 21.)  As Cleveland turned north on North Pritchard Avenue, he saw the truck turn right onto MacArthur Avenue.  (*Id.*)  Both Villanueva and Cleveland were driving slowly, below the speed limit, when on Pritchard.  (AUMF ¶ 67.)  North Pritchard dead-ends just north of MacArthur Avenue, and MacArthur Avenue is a short, dead-end street.  (UF ¶ 22.)  As Cleveland and Henderson approached the intersection of Pritchard and MacArthur, they saw that the truck had stopped on MacArthur.  (*Id.* ¶ 23.)

_____

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.
_____

### B.  The Shooting

The facts leading up to the shooting are highly disputed.  Cleveland and
Henderson claim that they activated the car's emergency lights and stopped near the
intersection of Pritchard and MacArthur, but Orozco and a third-party witness to the
shooting both testified that the red and blue flashing lights and the car's headlights turned
on only after the shooting occurred.  (*Id.* ¶ 24; Orozco Dep. ¶¶ 57:25–58:11; Hinkle Dep.
¶¶ 14:23–15:6, 16:20–17:1, 21:16–22:5, 28:16–29:1, Doc. 43-1.)  Cleveland and
Henderson got out of their car and immediately drew their firearms.  (UF ¶ 25.)
Cleveland stood near the open driver's side door and Henderson near the open
passenger's side door.  (*Id.* ¶ 26.)

Villanueva began to reverse out of MacArthur and maneuvered using a three-point
turn to face southbound on Pritchard.  (AUMF ¶ 83.)  Defendants claim that Villanueva
reversed at a high rate of speed and struck a parked vehicle, though Plaintiffs claim he
did not reverse at a high speed, witnesses testified they neither saw nor heard the truck
"rev" its engine or squeal its tires while reversing, and Orozco did not feel the truck
impact any parked vehicles while it backed up.  (UF ¶ 29; AUMF ¶¶ 85–87; Orozco
Decl. ¶ 17, Doc. 52.)

The parties also dispute how the truck began to move forward and whether it was
going towards Cleveland.  Orozco testified that the truck began to roll forward at a speed
of less than five miles an hour, and that there was more than enough space for Villanueva
to pass the car and continue down the street.  (AUMF ¶¶ 92–93.)   The truck was about
fifteen to twenty feet away from the car when it began to move.  (*Id.* ¶¶ 88, 91.)  Orozco
claims that he was looking out the front of windshield and did not see anyone in the space
between the curb and the car before the shooting or during any of the shots.  (Orozco
Decl. ¶¶ 22–25.)  Multiple witnesses testified that the truck was not driving directly at
Henderson, Cleveland, or the car at the time of the shooting.  (AUMF ¶ 94.)  Defendants,
on the other hand, claim that the truck turned its wheels directly toward where Cleveland
was standing and drove towards him.  (UF ¶ 30.)  Defendants do not dispute that the
truck was moving slowly, as Henderson testified that it was moving at less than ten miles
per hour.  (Henderson Dep. ¶¶ 60:22–25.)   Cleveland testified that he believed the car

_____
**CIVIL MINUTES – GENERAL**                                              **4**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

was going to run him over, and he started to move quickly to get out of the path of the truck.  (UF ¶ 32.)

Henderson claims that he yelled "police" and commands at Villanueva to show his hands.  (*Id.*  ¶ 27.)  However, witnesses testified that they did not hear "police" verbalized before shots were fired, and Orozco testified that he heard "police" for the first time as shots were being fired.  (Abel Orozco Dep. ¶¶ 15:18–16:2, Doc. 43-1; L. Mendez Dep. ¶ 23:22–25, Doc. 43-1; Orozco Dep. ¶¶ 73:20–74:8.)  A witness thought that Villanueva and Orozco were "being jacked," or robbed, and multiple witnesses heard Henderson say "stop motherfucker" before the shooting.  (Mendez Dep. ¶¶ 31:11–18; A. Orozco Dep. ¶¶ 35:5–16; 15:18–16:2.)

Within one second of whatever warning was issued, Henderson and Cleveland opened fire.  (AUMF ¶ 96.)  Orozco testified that the truck had barely moved forward, no more than two to three feet, at the time shots started.  (Orozco Decl. ¶19.)  Eye witnesses testified that the truck had not moved at all when shots began.  (Hinkle Dep. ¶¶ 24:10–13; Mendez Dep. ¶¶ 22:5-14; Estrada Dep. ¶¶ 13:2-11, Doc. 43-1.)  Cleveland testified that, as he moved to get out of the path of truck, he fired two shots where he thought the driver of the truck would be because he feared the truck was going to run him over.  (UF ¶ 33.)  Plaintiffs dispute that Cleveland was ever in the path of the truck, and their experts suggest that the shots entered through the side passenger door, meaning he was not in danger of being struck at the time he shot at the truck.  (*Id.*; Balash Decl. ¶¶ 9–12, Doc. 53; Defoe Decl. ¶¶ 17, 20, 29(a)(i), Doc. 47.)

Henderson claims that he believed that the truck was going to run over Cleveland.  (UF ¶ 34.)  He testified that while he saw Cleveland in his peripheral vision standing on the driver's side of the car, once he started firing he had no knowledge of Cleveland's positioning.  (Henderson Dep. ¶¶ 47:1–49:22, 67:13–68:17.)  Henderson did not think that Cleveland could get out of the path of the truck fast enough, something Plaintiffs dispute, as they claim that Cleveland was never in the path of truck and Henderson testified that he did not know exactly where Cleveland was.  (UF ¶ 35.)  Henderson fired at the truck, initially firing a few rounds at the hood but when that did not stop the truck, he aimed and shot where he thought the driver to be.  (*Id.*  ¶ 36.)  When the truck started to slow down, he stopped firing.  (*Id.*)  The truck collided into the car after Villanueva

---

**CIVIL MINUTES – GENERAL**                                                        **5**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

had been shot, traveling at about three to five miles per hour.  (*Id.* ¶ 37; Defoe Decl. ¶
29.)

### C.  After the Shooting

At 10:49 p.m., Henderson advised over the radio that shots had been fired.  (UF ¶
39.)  Henderson and Cleveland saw that Villanueva had been incapacitated, as he was
slumped forward in the driver's seat.  (AUMF ¶ 122.)  Cleveland and Henderson testified
that they did not see Orozco in the truck until after the shooting, though Plaintiffs claim
that they knew or should have known there was a passenger in the truck.  (Orozco
Undisputed Facts ("OUF") ¶ 41, Doc. 51-1.)  Orozco testified that he did not see
Henderson and Cleveland's vests marked "police" until after the shooting.  (*Id.* ¶ 128.)
One minute and eleven seconds after the shooting, Henderson requested an ambulance to
respond to the scene.  (UF ¶ 40.)  Cleveland and Henderson kept their weapons on
Orozco and Villanueva and waited for additional help to arrive.  (*Id.* ¶ 42.)

Orozco told Cleveland and Henderson he had been shot and Cleveland told him to
put his hands up, keep his hands in front of his face, not to move, and to stay in the car.
(OUF ¶¶ 214–15.)  At 10:54 p.m., CHP Sergeant Zavala arrived on the scene, and the
next several minutes were captured on his dash-camera.  (UF ¶ 43.)  Shortly after Zavala
arrived at the scene, Orozco opened the passenger side door and exited the truck with his
hands up. (*Id.* ¶ 44.)  Orozco was handcuffed behind his back, which he testified was
painful because he had been shot in the right elbow.  (Orozco Decl. ¶ 34.)  After Orozco
was taken into custody, Cleveland and Henderson had no further involvement at the
scene.  (UF ¶ 45.)  Orozco sat handcuffed on the curb as instructed by officers for about
ten to fifteen minutes before he received any medical attention.  (Orozco Decl. ¶ 35.)   He
was handcuffed to the gurney while being transported to the hospital and remained
handcuffed at UC Irvine Medical Center for five hours.  (*Id.* ¶¶ 38–39.)

Officers removed Villanueva from the truck about twelve minutes after shots were
reported fired.  (AUMF ¶ 129.)  He was suffering from three gunshot wounds, including
one to his skull, and officers handcuffed him and placed him on the ground.  (*Id.* ¶¶ 126–

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

27.)  Officers removed the handcuffs at the request of paramedics so that they could attend to Villanueva.  (*Id.*)  Villanueva died that night.  (*Id.* ¶ 46.)

On June 26, 2017, Plaintiffs filed this action in Orange County Superior Court. (Compl., Doc. 1-1.)  They allege four federal claims for relief against Cleveland and Henderson pursuant to 42 U.S.C. § 1983: (1) Unreasonable Detention and Arrest; (2) Excessive Force; (3) Denial of Medial Care; and (4) Substantive Due Process for interference with familial relations.[4]  (Compl. ¶¶ 34–77.)  Plaintiffs also allege four state law claims against Henderson, Cleveland, and the State of California for: (5) False Arrest/False Imprisonment; (6) Battery; (7) Negligence; and (8) Violation of California Civil Code § 52.1 (the Bane Act).  (Compl. ¶¶ 78–116.)[5]  Defendants removed the action to federal court on July 26, 2017.  (Notice of Removal, Doc. 1.)  Defendants now move for summary judgment on all eight of Plaintiffs' claims.  (Mot. at ii–vi.)

## II.    <u>LEGAL STANDARD</u>

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A factual dispute is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and a fact is "material" when it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.  But "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

_____

[4] The Substantive Due Process claim is brought only by Villanueva's parents.  (*See* Compl. ¶ 66.)

[5] Villanueva's parents have withdrawn their claims for Unreasonable Detention and Arrest and False Arrest/False Imprisonment.  (Response to Defendants' Conclusions of Law ¶¶ 1–4, 18–20.)

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

judge." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

The role of the Court is not to resolve disputes of fact but to assess whether there are any factual disputes to be tried.  The moving party bears the initial burden of demonstrating the absence of a genuine dispute of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).

## III.  DISCUSSION

### A.  Section 1983 Claims

#### 1. Fourth Amendment Excessive Force

Defendants argue for summary judgment on Plaintiffs' Fourth Amendment excessive force claim.  First, they argue that Orozco cannot join Villanueva's parents' Fourth Amendment excessive force claim for relief because, as a passenger in the truck whom they did not see when they fired, he was not seized.  (Mem. at 8.)  Next, Defendants argue that Henderson and Cleveland are protected by qualified immunity. (*Id.* at 14)

#### a.  Orozco's Fourth Amendment Standing

Defendants argue that Orozco cannot assert a Fourth Amendment excessive use of force claim "because he was not the object of the officers' use of force."  (Mem. at 8.) Essentially, they claim that because Henderson and Cleveland did not know Orozco was in the car, Orozco has no standing under the Fourth Amendment to challenge the force

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                         Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

_____

exercised against him because he was not "seized."  Instead, Defendants argue that
Orozco's claim must be analyzed under the Fourteenth Amendment.  (*Id.*)

"[T]here can be no question that apprehension by the use of deadly force is a
seizure subject to the reasonableness requirement of the Fourth Amendment."  *Tennessee
v. Garner*, 471 U.S. 1, 7 (1985).   A person is "seized" under the Fourth Amendment
"when [an] officer, by means of physical force or show of authority, terminates or
restrains his freedom of movement, though means intentionally applied."  *Brendlin v.
California*, 551 U.S. 249, 254 (2007) (internal quotations and citations omitted).  Both
the driver and passenger of a car are seized when police stop a car, and "an unintended
person may be the object of the detention, so long as the detention is willful and not
merely the consequence of an unknowing act."  *Id.* at 251, 254 (alterations and quotation
marks omitted).  The Supreme Court in *Brendlin* held that what matters in determining
whether a seizure has occurred is the "intent [that] has been conveyed to the person
confronted," not the "subjective intent" of the officer.  *See Brendlin*, 551 U.S. at 260–61.
In *Brower v. County of Inyo*, 489 U.S. 593 (1989), the Court held that the plaintiff was
seized when the car he was driving crashed into a roadblock officers had set to stop him.
*Id.* at 599.  *Brendlin* explained that "if the car had had another occupant, it would have
made sense to hold that he too had been seized when the car collided with the roadblock,"
rejecting the defendant's argument that "for a specific occupant of the car to be seized he
must be the motivating target of an officer's show of authority."  551 U.S. at 261.  Thus,
Orozco argues that, applying *Brendlin*, it does not matter if Villanueva was the
"motivating target" of Henderson and Cleveland's show of force.  (Orozco Opp. at 16.)
Instead, when Henderson and Cleveland intentionally stopped Villanueva's truck, they
seized everyone inside the truck, including Orozco.

While *Brendlin* seems to resolve this issue, Defendants cite to a recent Supreme
Court case, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021 n. 4 (2014), wherein the Court
recognized a circuit split "as to whether a passenger [in a shooting] . . . can recover under
a Fourth Amendment theory," but declined to express a view on the question.  (Mem. at
8.)  However, as the Third Circuit noted last year in *Davenport v. Borough of Homestead*,
870 F.3d 273 (3d Cir. 2017), "the majority of circuits have suggested that a passenger . . .
may seek relief under the Fourth Amendment."  *Id.* at 279 (collecting cases).   Further,

_____

**CIVIL MINUTES – GENERAL**                                              9

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

"those circuits that have suggested otherwise reached their decisions on this issue before the Supreme Court decided *Brendlin*." *Id.*; *see also Lerma-Mayoral v. City of El Centro*, Case No.: 15cv818-LAB (PCL), 2018 WL 4537752, at *7 (S.D. Cal. Sept. 21, 2018) (agreeing with *Davenport* and holding that passenger in shooting is seized under Fourth Amendment).

The Ninth Circuit, however, has yet to address this issue in a published decision. Defendants cite to an unpublished Ninth Circuit decision, *Arruda ex rel. Arruda v. County of Los Angeles*, 373 Fed. Appx. 798 (9th Cir. 2010), for support.  There, an officer accidentally struck a partner officer with a stray bullet when the partner officer was outside of the room where the shooting took place. *Id.* at 799–800.  Because the partner officer was not the "object" the officer intended to hit, the court found that he was not seized under the Fourth Amendment.  *Id.*  The *Arruda* court cited to *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990), upon which Defendants also rely, where an officer shot at a car to protect a hostage and the court found that the hostage had not been seized. *Id.* at 794–96.  Furthermore, a 2015 Southern District of California case, *Fletes v. City of San Diego*, Civil No. 13cv2279 JAH(JMA), 2015 WL 13326240 (S.D. Cal. Sep. 30, 2015), applied *Arruda* and *Landol* to a situation factually indistinguishable from Orozco's shooting – officers shot at the driver of a car fearing that he would run them over and hit the passenger as well. *Id.*  at *2.  The court found on summary judgment that the passenger was not seized because the officer who knew the passenger was in the car shot only the driver, and other two officers were unaware of the passenger's presence. *Id.* at *7.  In 2017, the Ninth Circuit affirmed the district court's decision in an unpublished opinion. *Fletes v. City of San Diego*, 687 Fed. Appx. 640 (9th Cir. 2017).

Here, considering the Supreme Court's decision in *Brendlin*, the Court agrees with *Davenport* and the majority of circuits and finds that Orozco may seek relief under the Fourth Amendment.

First, the facts in *Arruda* are starkly different than the facts presented by this case. Orozco was not shot by stray bullets.  Henderson and Cleveland's shots went where they intended them to go – Villanueva's car – and accomplished what Henderson and Cleveland intended – to stop Villanueva's truck.  Thus, applying *Brendlin*, when Henderson and Cleveland intentionally stopped the truck, Orozco, a passenger in the

---

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                     Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

truck, was seized under the Fourth Amendment.  Indeed, *Brendlin* expressly rejected
Defendants' argument that "for a specific occupant of the car to be seized he must be the
motivating target of an officer's show of authority."  551 U.S. at 261.

      Furthermore, to the extent that *Landol* is still good law after *Brendlin*, it is
distinguishable from the shooting here and *Fletes*'s reliance upon it was misplaced.  The
Sixth Circuit distinguished *Landol* and other hostage cases because "in a hostage
situation there is no intentional acquisition of physical control of the hostage; rather the
intention of the officer is manifestly not to seize, but rather to liberate, the hostage."
*Rodriguez v. Passinault*, 637 F.3d 675, 687 & n.5 (6th Cir. 2011) (holding that passenger
in shooting was seized).  The Court finds this distinction persuasive.  While an officer's
subjective intent is irrelevant to the seizure analysis, in situations where an officer seizes
a car to rescue a hostage, an officer does not convey to the hostage an intent to terminate
or restrain the hostage's freedom.  *See Brendlin*, 551 U.S. at 261.  Thus, it might make
sense to rule that the hostage has not been seized under the Fourth Amendment.  Here,
however, Cleveland and Henderson were indisputably not shooting at Villanueva to
liberate Orozco, and no such intent was conveyed to Orozco.

      Moreover, the Court finds it difficult to reconcile ruling that the passenger of a car
is not seized when police stop a car by gunfire with *Brendlin*'s holding that the passenger
of a car is seized when police stop a car by pulling it over.  *See* 551 U.S. at 251.  Indeed,
the district court in *Fletes* did not truly engage with the plaintiff's *Brendlin*-based
argument, and the Ninth Circuit's unpublished decision affirming does not mention
*Brendlin* at all.  *See* 2015 WL 13326240 at *7; 687 Fed. Appx. at 641.

      For the foregoing reasons, the Court finds that Orozco has standing to pursue a
Fourth Amendment excessive force claim.

### b.  Qualified Immunity

      The resolution of a qualified immunity defense turns on two questions: (1)
whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts
. . . show the officer's conduct violated a constitutional right," and (2) "whether the right
was clearly established" at the time of the officer's conduct.  *Saucier v. Katz*, 533 U.S.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223
(2009).   For the reasons discussed below, the Court concludes that, viewing the facts in
the light most favorable to Plaintiffs, Henderson and Cleveland violated Villanueva and
Orozco's Fourth Amendment constitutional right to be free from excessive force, and
those rights were "clearly established" at the time of the shooting.  Thus, qualified
immunity at the summary judgment stage is not appropriate.

### i.    Fourth Amendment Violation

       In *Tennessee v. Garner* and *Graham v. Connor*, the Supreme Court clarified that
the Fourth Amendment's protection against "unreasonable . . . seizures" protects all
persons from the use of excessive force during an arrest, detention, or other seizure.
*Garner*, 471 U.S. at 3; *Graham v. Connor*, 490 U.S. 386, 395 (U.S. 1989); *see* U.S.
Const. amend. IV.  In examining a claim of excessive force, a court should balance "the
nature and quality of the intrusion on the individual's Fourth Amendment interests
against the countervailing governmental interests at stake" to determine whether the
officer's conduct was "objectively reasonable."  *Bryan v. MacPherson*, 630 F.3d 805,
823 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396).  The government's interests
include "the severity of the crime at issue, whether the suspect poses an immediate threat
to the safety of the officers or others, and whether he is actively resisting arrest or
attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  Yet, rather than
mechanically marching through *Graham*'s nonexhaustive list of factors, the Court should
"examine the totality of the circumstances, including whatever factors may be relevant in
a particular case."  *Marquez v. City of Phoenix*, 693 F.3d 1167, 1174–75 (9th Cir. 2012).
A court should examine an officer's use of force based on the "perspective of a
reasonable officer on the scene" and avoid post-hoc judgments based on the benefit of
hindsight.  *Graham*, 490 U.S. at 396.  Because *Garner* and *Graham* demand an objective
inquiry, an officer's intentions – good or ill – have no bearing on whether he employed
excessive force.  *Id.* at 397.
       "The use of deadly force implicates the highest level of Fourth Amendment
interests both because the suspect has a 'fundamental interest in his own life' and because

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                     Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

such force 'frustrates the interest of the individual, and of society, in judicial
determination of guilt and punishment.'" *A. K. H. by & through Landeros v. City of
Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (quoting *Garner*, 471 U.S. at 9).  Thus, while
"there are no per se rules in the Fourth Amendment excessive force context," *George v.
Morris*, 736 F.3d 829, 838 (9th Cir. 2013), an officer generally cannot use deadly force
unless "the officer has probable cause to believe that the suspect poses a significant threat
of death or serious physical injury to the officer or others." *Gonzalez v. City of Anaheim*,
747 F.3d 789, 793 (9th Cir. 2014) (quoting *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.
1994)); *Garner*, 471 U.S. at 3.  *Garner* and this Circuit's precedents also hold that, before
using deadly force, "an officer must give a warning . . . 'whenever practicable.'"
*Gonzalez*, 747 F.3d at 794 (quoting *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th
Cir.1997)).

Here, the Court finds that there are simply too many disputes of material fact to
rule on summary judgment that Henderson and Cleveland's use of deadly force was
objectively reasonable.

Defendants argue that the first *Graham* factor, the severity of the crime at issue,
weighs in favor of the use of deadly force because Villanueva was observed doing
donuts, speeding, driving recklessly, and "committing an assault with a deadly weapon
on a peace officer."  (Mem. at 12.)  However, the only "severe" crime identified − that
Villanueva committed an assault with his car − is highly disputed.[6]  While Cleveland and
Henderson have testified that the truck was traveling towards Cleveland, Orozco has
testified that he did not see Cleveland in front of the truck's path and that Villanueva was
trying to exit the cul-de-sac, not hit Cleveland.  (Orozco Decl. ¶¶ 23–24.)  It is undisputed
that there was enough space for the truck to pass the police car.  (Defendant's Reply to
Plaintiffs Additional Facts (RPAF), ¶ 92, Doc. 71.)  Further, multiple witnesses
corroborate Orozco's testimony that the truck was not driving towards Cleveland.  (*See*

_____

[6]  *See Randall v. Williamson*, 211 Fed. Appx. 565, 567 (9th Cir. 2006) (finding that determining
whether an assault occurred based on the officer's belief that a car would not stop was an
"intensely factual issue that cannot be resolved at summary judgment").

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

Hinkle Dep. ¶¶ 39:12-16; Estrada Dep. ¶¶ 18:15-23.)  Thus, a reasonable jury could find
that no assault was committed.  Further, Henderson and Cleveland had no information
that either Villanueva or Orozco had injured anyone or that either had a weapon.

Defendants also argue, with respect to the third *Graham* factor, that "[t]here is []
no question Villanueva appeared to be actively trying to evade arrest."  (Mem. at 12.)
However, it is not clear that this is true based on Plaintiffs' facts that, if believed by a
reasonable jury, could lead to the conclusion that Villanueva and Orozco did not even
know Cleveland and Henderson were police officers before the shooting.  Orozco
testified that he did not recognize the siren used by Henderson and Cleveland in their
initial attempt to pull Villanueva over as a police siren.[7]  It is undisputed that, while
following Villanueva and Orozco, Cleveland and Henderson had their lights and sirens
off.  Further, it is genuinely disputed whether or not Cleveland and Henderson had their
headlights or emergency lights on when they stopped on MacArthur Avenue and
ultimately shot Villanueva and Orozco.  Both Orozco and an eyewitness have testified
that the car's lights were not activated until *after* the shooting; one witness thought that
Villanueva and Orozco were being robbed.  It is also disputed whether Henderson and
Cleveland identified themselves as police before shooting.  Henderson claims that he
yelled "police" before firing, but Orozco testified that he first heard it as shots were being
fired.  Multiple witnesses testified that they never heard "police" verbalized before shots
were fired.  Thus, far from giving a warning of deadly force prior to exercising it,
Henderson and Cleveland might not have even identified themselves as police.
Accordingly, viewing the facts in the light most favorable to Plaintiffs, there is a genuine
dispute whether Villanueva and Orozco were actively trying to evade arrest.

Defendants' further argue that Villanueva and Orozco posed an immediate threat
to the safety of Henderson and Cleveland.  This, too, is marred by genuine factual
disputes.  Defendants argue that, because Villanueva drove directly towards Cleveland,

---

[7] While Orozco's original police interview beside his hospital bed indicates that he may in fact
have known immediately that Cleveland and Henderson were police (Orozco Interview, 15:21-
16:20; 18:10-20:6, Ex. 4 to Dean Decl., Doc. 33-7.), "credibility determinations, the weighing of
evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of
a judge." *Acosta*, 718 F.3d at 828.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

Cleveland and Henderson's fear for Cleveland's life was objectively reasonable.  (Mem. at 13–14.)  Such a conclusion asks the Court to accept the Defendants' facts and not the Plaintiffs' – the opposite of the appropriate standard for Defendants' Motion for summary judgment.[8]

First, it is disputed whether or not Villanueva's truck was accelerating forward before Cleveland and Henderson fired.  Multiple witnesses have testified that it was not.  While Defendants are correct that this contradicts Orozco's testimony that the car was going five miles per hour forward when shots began, this is a factual dispute that a jury should resolve.  (Defendant's Reply to Plaintiffs Additional Facts (RPAF), ¶ 89, Doc. 71.)  If the truck was moving forward, it is disputed how fast it did so.  Orozco testified that the truck was moving less than five miles per hour, while Henderson testified it was going less than ten miles an hour.   Given that its undisputed that the truck was only fifteen to twenty feet away from Henderson and Cleveland (Henderson Dep. 15:15–19), a difference of five miles per hour in speed might make a material difference to a jury in terms of how reasonable was the fear for Cleveland's life.

Second, as noted above, it is disputed whether or not the truck was driving towards Cleveland.  This calls into question how reasonable Henderson's shots in defense of Cleveland were, especially considering Henderson had only an idea of where Cleveland was based on his peripheral vision and did not know where Cleveland was once he began to shoot.  (Henderson Dep. ¶¶ 47:1-49:22, 67:13-68:17.)  Furthermore, even if the truck was originally driving towards Cleveland, Plaintiffs have identified a factual dispute as to whether he was in the path of the car when he fired at the truck.  Ballistic evidence presented by the Plaintiffs suggests that the shots entered through the side passenger door, meaning that Cleveland was not in front of the truck when he fired.  (Balash Decl. ¶¶ 9-12; Defoe Decl. ¶¶ 17, 20, 29(a)(i).)  Thus, under Plaintiffs' facts, a jury could find Henderson and Cleveland acted unreasonably when they shot a slow-moving (if at all) truck that was not headed directly towards either of them.

---

[8] Indeed, Defendants' own police practices expert testified that whether Cleveland was "in immediate danger of being run over" is "the ultimate question in this case. That's for the trier of fact."  (Chapman Depo. 100:22–101:1–5, Doc. 67-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                           Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

Defendants cite to cases in their Reply that they claim "compel" the Court to find
that Henderson and Cleveland's use of force was reasonable.  (Reply at 13.)  In *Levesque
v. City of Mesa*, 444 Fed. Appx. 978 (9th Cir. 2011), the Ninth Circuit held that officers
acted reasonably in shooting a man who had, indisputably, just threatened someone at
gun point and then, indisputably, drove his car in the direction of the officers.  *Id.* at 979.
In *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), the Ninth Circuit found that an
officer was reasonable in shooting the driver of a car who had "failed to yield to police
sirens as well as to direct commands to put his hands up and to stop the vehicle," when
the car was "accelerating, its tires were spinning, mud was flying up" and the officer
feared the driver would run over him or his partner.  *Id.* at 551.  In *Plumhoff*, the Supreme
Court found an officer was reasonable in shooting a fleeing suspect after the suspect had
led police in a chase exceeding 100 miles per hour and where his "outrageously reckless
driving posed a grave safety risk."  134 S. Ct. at 2021.  The suspect's car stopped only
because it collided with a police car, and less than three seconds later he "was obviously
pushing down on the accelerator because the car's wheels were spinning."  *Id.*  "[A]ll that
a reasonable officer could have concluded was that [he] was intent on resuming his flight
and that, if he was allowed to do so, he would once again pose a deadly threat for others
on the road." *Id.* at 2022.

None of these cases are analogous to the facts here viewed in the light most
favorable to the Plaintiffs.  First, unlike *Levesque*, it is disputed whether or not the truck
was headed towards Cleveland and neither Villanueva nor Orozco were suspected of
violent crimes.  And while in *Levesque* the court disregarded an eyewitness's testimony
that she did not "believe" the officers were in danger, the eyewitness testimony here
disputes the basic facts of the encounter – whether the truck was moving, how fast it was
going, and in what direction.  *See* 444 Fed. Appx. at 979.  This case is also
distinguishable from *Wilkinson*, where the car was clearly accelerating and its wheels
were spinning rapidly.  *See* 610 F.3d at 551.  Furthermore, unlike in *Wilkinson* and
*Plumhoff*, it cannot be said on Plaintiffs' facts that Villanueva and Orozco "failed to

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

yield" to police sirens and commands.[9]   Orozco himself and eyewitnesses dispute
whether the police car's lights were on when Cleveland stopped on MacArthur Avenue,
and Orozco testified that he never heard a sound he recognized as a police siren.
Moreover, it is heavily disputed whether Henderson and Cleveland told Villanueva to
stop the car before shooting or gave him sufficient time to respond.

Additionally, the movement of Villanueva's car immediately prior to shots being
fired in this case was completely different than the high speed chase in *Plumhoff*.
Villanueva reached speeds only 50 to 70 miles per hour; Henderson and Cleveland were
following him at a distance to "maintain surveillance;" he had not collided with a police
car; and, apart from the allegation that he ran a few red lights, there are no allegations
that Villanueva's driving "posed a grave public safety risk."  To the contrary, Henderson
and Cleveland admit that, prior to stopping on MacArthur Avenue, "[b]oth the pick-up
truck and the black unmarked police vehicle were driving slowly, below the speed limit,
when on Pritchard."  (RPAF ¶ 67.)  Thus, while in *Plumhoff* the car stopped because it
collided into a police car after a chase exceeding 100 miles per hour, here Villanueva
stopped in a cul-de-sac after last being seen driving below the speed limit.

Accordingly, the Court finds that, viewing the facts in the light most favorable to
the Plaintiffs, a reasonable jury could conclude that Cleveland and Henderson employed
excessive force when they shot Villanueva and Orozco.[10]

_____

[9] That Henderson and Cleveland may not have adequately warned Villanueva and Orozco also
distinguishes this case from *Fletes*, where the Ninth Circuit affirmed the district court's finding
that shooting the driver of a car was reasonable after the officers "repeatedly directed [the driver]
to turn off the car's engine, put his hands up, or 'show his hands.'"  2015 WL 13326240, at *2.
The case is further distinguishable because there the car's "wheels were spinning, and the engine
could be heard revving."  *Id.*
[10] Defendants also argue that because Orozco testified that Cleveland shot him, Henderson
should be granted summary judgment on Orozco's excessive force claim.  (Reply at 20.)  While
Orozco's evidence suggests that Cleveland shot him through the passenger window (OUF ¶
135), there is no conclusive evidence before the Court that establishes Cleveland shot Orozco.
This, again, is a factual inquiry ill-suited for resolution on a summary judgment motion.

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

### ii.    Whether Right Was Clearly Established

Having found a constitutional violation based on Plaintiffs' facts, the Court next
determines whether Villanueva and Orozco's rights were clearly established at the time
of the shooting.

For a right to be clearly established, its contours must be "sufficiently definite that
any reasonable official . . . would have understood that he was violating it." *City & Cty.
of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).  However, "that a single
judge, or even a group of judges, disagrees about the contours of a right does not
automatically render the law unclear." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557
U.S. 364, 378 (2009).  To determine whether a right is clearly established, a court first
considers whether a decision by the Supreme Court or this Circuit clearly establishes the
right. *Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015); *Boyd v.
Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004).  In the absence of binding precedent, this
Court may consider whether a consensus has developed among other courts that the
conduct in question violates the Constitution.  *See id.*  The Supreme Court has cautioned
that "'clearly established law' should not be defined 'at a high level of generality.'"
*White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731,
742 (2011)); *see also City & Cty. of San Francisco*, 135 S. Ct. at 1774 n.3 (collecting
cases).

Here, there are simply too many disputed issues of material fact for the Court to
find, viewing the facts in the light most favorable to the Plaintiffs, that Henderson and
Cleveland did not violate Villanueva and Orozco's clearly established rights.

The operative facts in this case are similar to those in *Randall v. Williamson*, 211
Fed. Appx. 565 (9th. Cir. 2006), where the Ninth Circuit reversed a district court's grant
of qualified immunity to a police officer for shooting the driver of a car.  *Id.* at 566–67.
The driver had been observed travelling at speeds of more than 80 miles per hour, had
run a few red lights and a stop sign, and was driving through areas where pedestrians
were present.  *Randall v. City of Fairbanks*, 352 F. Supp. 2d 1028, 1030 (D. Alaska
2005).  When the car approached the roadblock, it was moving "at a slow walking pace"
and the officer drew his weapon.  *Id.* at 1031.  When the driver saw the weapon, he

---

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                      Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.
═══════════════════════════════════════════════════════════════════════

ducked, and while it was undisputed that the van did not accelerate, it was disputed
whether the van stopped or continued to move forward.  *Id.*  The van touched the
officer's shins and the officer placed his forearm on the hood of the car before firing his
pistol at a downward angle toward where the driver was ducking.  *Id.*

The district court found that a reasonable jury could find that the officer had
violated the driver's Fourth Amendment rights, noting that the van was moving slow, that
the officer had time to get out of the way of the van, and that there was no evidence that
the driver was purposefully steering the van to hit the officer.  *Id.* at 1034–35.  But,
relying on the Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), the
court found that the officer did not violate a clearly established right and that he was
entitled to qualified immunity. *Id.* at 1037.

The Ninth Circuit reversed the District Court's grant of immunity.  "If the van had
come to a complete stop, as plaintiff contends, there was no cause to believe that [the
driver] was a danger to [the officer] or to anyone else when [the officer] shot him."
*Randall*, 211 Fed. Appx. at 567.  It distinguished *Brosseau* on the grounds that the driver
was not suspected of a crime of violence and, assuming the car was stopped, he was not
attempting to flee the scene.  *Id.*  The Ninth Circuit's reversal hinged on there being too
many disputed facts to grant summary judgment on qualified immunity.  *Id.*  If the
plaintiff's facts were believed, "what we are left with is a police officer who shot and
killed a motorist for nothing more than traffic violations – violations that the officer's
own lawyer admits were not serious enough to justify the use of deadly force. Under
these circumstances, [the officer's] conduct was not justified under *Tennessee v. Garner*,
and no reasonable officer could have thought otherwise."  *Id.* (citing *Saucier*, 553 U.S. at
202.); *see also Bordegaray v. County of Santa Barbara*, No. 2:14-cv-08610-CAS-JPR,
2016 WL 7223254, at *8 (C.D. Cal. Dec. 12, 2016) (denying qualified immunity because
it was disputed whether driver of a car revved engine and drove towards officers and thus
"a jury could find that a reasonable officer in [the officer's] position would not have
believed that he or anyone else was in imminent danger and, thus, would have understood
that his use of deadly force violated plaintiff's Fourth Amendment right").

Here, viewing the facts in the light most favorable to Plaintiffs, Villanueva had
merely violated traffic laws, his truck was moving slowly or not at all, and he was not

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

driving in Cleveland's direction.  Thus, a reasonable jury could find that a reasonable
officer in Cleveland and Henderson's position would not have believed that Cleveland
was in imminent danger and would have understood that their use of deadly force
violated Villanueva and Orozco's Fourth Amendment rights.

Accordingly, viewing the facts in the light most favorable to the Plaintiffs, the
Court finds that Henderson and Cleveland are not entitled to qualified immunity as to
their use of excessive force against Villanueva and Orozco.

## 2.  **Substantive Due Process**

Defendants move for summary judgment on Villanueva's parents' substantive due
process claim because Henderson and Cleveland did not have a "purpose to harm"
Villanueva and, in the alternative, they are entitled to qualified immunity on the issue.
(Mem. at 18–20.)

A substantive due process claim requires a plaintiff to demonstrate that an
officer's conduct "shocks the conscience," a standard that requires either "deliberate
indifference" or "purpose to harm," depending on "whether the officer[] had the
opportunity for actual deliberation."  *Porter v. Osborn*, 546 F.3d 1131, 1138–39 (9th Cir.
2008).  At summary judgment, the appropriate standard may be determined as a matter of
law if there is no genuine dispute over whether the officer had sufficient time to
deliberate.  *Garlick v. Cty. of Kern*, 167 F. Supp. 3d 1117, 1165 (E.D. Cal. 2016); *Chien
Van Bui v. City & Cty. of San Francisco*, 61 F. Supp. 3d 877, 901 (N.D. Cal. 2014).

Plaintiffs dispute whether or not there was an opportunity for "actual deliberation"
here.  (Villanueva Opp. at 19.)  They try to distinguish *Porter*, in which the Ninth Circuit
determined the opportunity for deliberation was too brief to apply the deliberate
indifference standard and found that application of the "purpose to harm" standard was
appropriate.  In *Porter*, the altercation between police and the suspect took place over
five minutes.  *Porter*, 546 at 1133.  After trying to block a suspicious vehicle from
driving away, police told the driver to stop multiple times, briefly spoke with the driver,
sprayed him with pepper spray and, when the driver tried to drive towards another
officer, shot him.  *Id.*  at 1133–34.  Because the officer faced a "fast paced, evolving

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

_____

situation presenting competing obligations with insufficient time for the kind of actual
deliberation required for deliberate indifference," the Ninth Circuit remanded to the
district court to review the officer's actions under the "purpose to harm" standard.  *Id.* at
1142.

It is clear that there was less time to deliberate here than in *Porter*.  Only a few
seconds elapsed from the time Cleveland and Henderson stopped their car to the time
shots were fired.  (UF ¶ 38.)  Plaintiffs dispute this by pointing to the fact that "[d]ispatch
records establish the total time between Defendants arriving on N. Pritchard Avenue to
reporting shots fired to be 1 minute, 24 seconds."  (*Id.*)  This does not really speak to
when the officers began shooting, but rather when they reported shots fired.  Nonetheless,
even if the shooting began approximately one and a half minutes after stopping, it is still
a fifth of the time that the officers in *Porter* had to deliberate.  Accordingly, the Court
finds that the "purpose to harm" standard applies as a matter of law because there is no
genuine dispute over whether Cleveland and Henderson had sufficient time to deliberate.

Thus, Cleveland and Henderson can be held liable under a substantive due process
theory only if they "acted with a purpose to harm [Villanueva] for reasons unrelated to
legitimate law enforcement objectives."  *Porter*, 546 F.3d at 1137.  Under this standard, a
plaintiff must submit non-speculative evidence that demonstrates an officer's improper
motive.  *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001); *Shirar v. Guerrero*, 673
Fed. Appx. 673, 675 (9th Cir. 2016) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598
(1998).  Construing the facts in the light most favorable Plaintiffs, a reasonable jury
could conclude that Henderson and Cleveland acted unreasonably by shooting Villanueva
and Orozco, as discussed above.  But there is no evidence—direct or circumstantial—
suggesting that Henderson and Cleveland shot Villanueva with the purpose to harm him.

Accordingly, the Court GRANTS Defendants' Motion for summary judgment on
Villanueva's parents' substantive due process claim.  Because the Court finds that
Henderson and Cleveland cannot be held liable under a substantive due process theory, it
need not reach whether they are entitled to qualified immunity on that claim.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

### 3.  <u>Unreasonable Detention and Arrest</u>

Villanueva's parents have withdrawn their Unreasonable Detention and Arrest
claim, but Orozco has not.  While Orozco pleads this as a single claim, unreasonable
arrest and detention are two separate but related claims.

To prove an unreasonable detention, Orozco must show that Henderson and
Cleveland lacked "reasonable suspicion" that he was engaged in criminal activity.  *See
Terry v. Ohio*, 392 U.S. 1, 23–27 (1968).  An investigatory stop of a vehicle is justified
under the Fourth Amendment if the officer reasonably suspects that a traffic violation has
occurred.  *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012).  However, a traffic
stop "exceeding the time needed to handle the matter for which the stop was made"
violates the constitutional protection against unreasonable seizures. *Rodriguez v. United
States*, 135 S. Ct 1609, 1612 (2015).  Handling the traffic stop includes checking driver's
licenses, determining whether there are outstanding warrants and inspecting the car's
registration and proof of insurance.  *Id.* at 1615. An officer may not conduct unrelated
checks "in a way that prolongs the stop, absent the reasonable suspicion ordinarily
demanded to justify detaining an individual."  *Id.*   "Reasonable suspicion" is defined as
"a particularized and objective basis for suspecting the particular person stopped of
criminal activity."  *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013).

To succeed on a false arrest claim, Orozco must demonstrate that Henderson and
Cleveland lacked probable cause for his arrest.  *McKenzie v. Lamb*, 738 F.2d 1005, 1007
(9th Cir. 1984).  "[I]n a §1983 action the factual matters underlying the judgment of
reasonableness generally mean that probable cause is a question for the jury."  *Id.*  at
1008.   "Probable cause to arrest exists when 'officers have knowledge or reasonably
trustworthy information sufficient to lead a person of reasonable caution to believe an
offense has been or is being committed by the person being arrested.'"  *Harper v. City of
Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008).  The Ninth Circuit has found that
"[t]here is no bright-line rule to determine when an investigatory stop becomes an arrest."
*Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.1996).  The analysis depends upon
the "totality of the circumstances" and considers "the intrusiveness of the stop, *i.e.*, the
aggressiveness of the police methods and how much the plaintiff's liberty was restricted,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

_____

. . . and the justification for the use of such tactics, *i.e.*, whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *Id.*

Orozco contends that, as the passenger in Villanueva's car, he "committed no crime" and there was no probable cause to arrest him, nor reasonable suspicion to detain him. (*See* Orozco Opp. at 22; Compl. ¶ 35.)  At oral argument, Defendants argued that because there was probable cause to stop Villanueva's truck for traffic violations, there was reasonable suspicion to detain Orozco.  Essentially, for the purposes of this claim, Defendants ask the Court to treat Orozco's detention as the product of a mere traffic stop of Villanueva.  While it is true that the passenger of a vehicle can be detained pursuant to a lawful traffic stop, *see, e.g., Brendlin* 551 U.S. at 254–57, Defendants proffer no explanation as to why Orozco was forced to get out of the car at gunpoint and detained for seven minutes before being handcuffed by other officers.  (OUF ¶¶ 214–219.)  A reasonable jury could conclude that holding Orozco at gunpoint unreasonably prolonged the stop such that some sort of reasonable suspicion was needed to justify Orozco's detainment.  Defendants have not argued that they had any such reasonable suspicion, and thus summary judgment on this claim is inappropriate.

As to the false arrest claim, though Henderson and Cleveland shot Orozco, ordered him to get out of the vehicle at gunpoint, and left the scene only when he was in custody, Defendants argue that Cleveland and Henderson did not arrest Orozco because they did not place the handcuffs on him.  (Reply at 9.)  However, a reasonable jury could determine that Henderson and Cleveland arrested Orozco.  As noted above, there is no "bright-line" for when a stop becomes an arrest, and here a reasonable jury could find Henderson and Cleveland's shooting and holding Orozco at gunpoint unreasonably intrusive and aggressive.  Further, a jury could find that Henderson and Cleveland's actions were unwarranted given that there was no evidence that Orozco gave Henderson and Cleveland a reason to fear for their safety.  Thus, a jury could reasonably find that Henderson and Cleveland arrested Orozco without probable cause.

Accordingly, the Court GRANTS Defendants' Motion on the Fourth Amendment unreasonable arrest and detention claim as to Villanueva's parents and DENIES it as to Orozco.  While Defendants argued for qualified immunity on this issue in their opening

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.
_____

brief (Mem. at 8), their argument addresses probable cause only as to Villanueva, not Orozco.

## 4.  **Denial of Medical Care**

Defendants argue that because Henderson and Cleveland promptly summoned medical care for Villanueva and Orozco immediately after the shooting, they cannot be found liable for denying Villanueva and Orozco medical care under the Fourth Amendment.  (Mem. at 18.)

"[A] police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment."  *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (citing to *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) ("Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.")).

Here, Plaintiffs argue that waiting a minute to report shots were fired, and then another minute to summon an ambulance, presents "at minimum a question of fact" as to whether Henderson and Cleveland promptly summoned medical care.[11]  (Villanueva Opp. at 18.)  Yet, calling an ambulance only two minutes after shots were fired was not unreasonable.  For example, in *Manni v. City of San Diego*, No. 11–CV–0435W (DHB), 2013 WL 6159317 (S.D. Cal. 2013) the court found that it was reasonable for an officer to wait fifteen minutes to summon medical care for a suspect that had a broken arm, even though the officer "immediately believed he may have injured" the suspect.  *Id.* at *6. The court noted that "the Fourth Amendment does not require officers to do everything

_____

[11] Orozco argues in his Opposition that keeping him handcuffed while he was in transit to and being taken care of at the hospital is also relevant to this claim.  (Orozco Opp. at 22.)  But, it is undisputed that after he was taken into custody, Henderson and Cleveland had no further involvement at the scene.  Thus, to the extent his denial of medical care claim is based on the actions of officers other than Cleveland and Henderson, they are irrelevant to the claim against Henderson and Cleveland.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                          Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.
_____

possible, but instead to act objectively reasonable." *Id.* (citing *Tatum*, 441 F.3d at 1099). While it was more urgent and apparent that medical care was needed here than in *Manni* where the suspect merely had a broken arm, Henderson and Cleveland called for an ambulance within two minutes of the shooting.  Henderson even asked that the ambulance be expedited, something Plaintiffs do not dispute.  (Henderson Decl. ¶ 13.)

Thus, even viewing the facts in the light most favorable to the Plaintiffs, the Court GRANTS Defendants' motion for summary judgment on Plaintiffs' claim for denial of medical care.  Because the Court finds that Henderson and Cleveland cannot be held liable under a denial of medical care theory, it need not reach whether they are entitled to qualified immunity on this claim.

### B.  <u>State Law Claims</u>

The state law claims are brought against all defendants, including the State of California.  *See* Cal. Govt. Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment."); *see also Hayes v. Cty of San Diego*, 57 Cal. 4th 622, 629 (2013) (citing Cal. Gov. Code § 815.2).  There is no dispute that Henderson and Cleveland were acting within the scope of their employment as CHP officers.  Thus, any state law claim that can be made against them can also be made against California.

#### 1.  <u>False Arrest/False Imprisonment</u>

As with the Fourth Amendment unreasonable detention and arrest claims discussed above, Villanueva's parents have withdrawn their claim for false arrest and imprisonment, but Orozco has not.  (Response to Defendants' Conclusions of Law ¶¶ 18–20; Orozco Opp. at 23–24.)

"'[F]alse arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology." *Collins v. City and County of San Francisco*, 50 Cal. App. 3d 671, 673 (1975).  "False imprisonment is 'the nonconsensual, intentional confinement of a person,

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                  Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

_____

without lawful privilege, for an appreciable length of time, however short.'" *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992).  "[California] Penal Code § 847(b) protects police officers from civil liability for false arrest or imprisonment arising out of an arrest if the arrest is lawful or the officer had reasonable cause to believe it was lawful. The existence of probable cause is necessary but not by itself sufficient to establish an arrest's lawfulness." *Id.*

Here, the analysis mimics that for the unreasonable detention and arrest claims under the Fourth Amendment.  While Defendants are entitled to judgment with respect to Villanueva's parents because they have withdrawn this claim, Defendants have not sufficiently proven that the arrest of Orozco was lawful or that his detention was reasonable.

Accordingly, the Court GRANTS Defendants' motion as it pertains Villanueva's parents but DENIES it as to Orozco.

## 2. **Battery**

The standard for determining the reasonableness of an officer's use of force pursuant to a battery claim is analogous to the Fourth Amendment's reasonableness inquiry.  *See Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1232 (2013).  For the same reasons discussed above, a reasonable jury could conclude that Henderson and Cleveland's use of deadly force was unreasonable.

Accordingly, the Court DENIES Defendants' Motion for summary judgment as to Plaintiffs' battery claim.

## 3. **Negligence**

The California Supreme Court has "long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes*, 57 Cal. 4th at 629.  Under California negligence law, "liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Id.* at 626.  Defendants rely on the same arguments they

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

relied upon for judgment on Plaintiffs' excessive force claim; and, for the same reasons, those arguments are insufficient here.

Accordingly, the Court DENIES Defendants' Motion for summary judgment as to Plaintiffs' negligence claim.

### 4.  Bane Act

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. City of Sacramento*, 888 F.3d 1030, 1040 (9th. Cir. 2018); Cal. Civ. Code § 52.1(a).  "Section 52.1 'provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'"  *Reese*, 888 F.3d at 1040 (quoting *Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)).  Qualified immunity is not available for claims brought under the Act.  *Reese*, 888 F.3d at 1040–41.

The parties dispute the elements of a Bane Act claim.  Defendants argue that, in *Reese*, the Ninth Circuit found that, based on a recent California Court of Appeal case construing the Act,[12] in addition to proving a constitutional violation, the Plaintiffs must prove that Henderson and Cleveland had the "specific intent" to violate their rights. (Mem. at 24.)  Plaintiffs argue that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1," meaning that no intent element is needed.  (Villanueva Opp. at 24.)  *Chaudry*, 751 F.3d at 1105–06.

While noting that there has been confusion as to whether simply pleading a constitutional violation was enough, the Ninth Circuit in *Reese* was explicit that specific intent to violate the plaintiff's rights is a requirement of the Bane Act: "the Bane Act requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  *Reese*, 888 F.3d at 1043 (internal citations omitted).  Indeed, the Ninth Circuit had previously found that only a constitutional violation was needed to succeed on a Bane Act claim, but those cases "did not address whether the Bane Act required some

---

[12] *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017).

---

**CIVIL MINUTES – GENERAL**                                        27

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                    Date: January 31, 2019
Title: Armando Villanueva et al. v. State of California, et al.

_____

showing of intent in addition to showing the constitutional violation."  *Id.* at 1044 (citing
to *Chaudry*, 751 F.3d at 1105; *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)).
In defining the specific intent needed, *Reese* explained that "a mere intention to use force
that the jury ultimately finds unreasonable—that is, general criminal intent—is
insufficient.  Rather, the jury must find that the defendants intended not only the force,
but its unreasonableness, its character as 'more than necessary under the circumstances.'"
*Id.* at 1045 (internal citations and quotations omitted).  Since the Ninth Circuit's decision
in *Reese*, other courts have applied the specific intent requirement to excessive force
police shooting cases as well.  *See Losee v. City of Chico*, 738 Fed. Appx. 398, 401 (9th.
Cir. June 18, 2018); *Craig v. Cty. Santa Clara*, No. 17-CV-02115-LHK, 2018 WL
3777363, at *19–20 (N.D. Cal. Aug. 9, 2018); *Estate of Montanez v. City of Indio*, No.
5:17–cv–00130–ODW(SHK), 2018 WL 1989533, at *13–14 (C.D. Cal April 15, 2018).

Thus, the Court concludes that the Bane Act requires a showing that (1)
Henderson and Cleveland violated Villanueva and Orozco's constitutional rights in using
excessive force and (2) that they had a specific intent to violate those rights.  As
discussed above in the Court's analysis of Villanueva's parents' substantive due process
claim, there is no evidence that Henderson and Cleveland "intended not only the force,
but its unreasonableness" as well.  *See Reese*, 880 F.3d at 1045.

Accordingly, the Court GRANTS Defendants' motion for summary judgment on
Plaintiffs' Bane Act claim.


**IV.    <u>CONCLUSION</u>**

For the aforementioned reasons, the Court GRANTS in part and DENIES in part
Defendants' Motion.  Defendants' Motion is GRANTED as to:

- Villanueva's parents' substantive due process claim;
- Villanueva's parents' Fourth Amendment unreasonable arrest and detention claim;
- Villanueva's parents and Orozco's denial of medical care claim;
- Villanueva's parents' state law false arrest claim.
- and Villanueva's parents' and Orozco's Bane Act claim.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-01302-JLS-KES                              Date: January 31, 2019

Title: Armando Villanueva et al. v. State of California, et al.

Defendants' Motion is DENIED as to all other claims.

Initials of Preparer: tg