Paul R. Kiesel, State Bar No. 119854
  *kiesel@kiesel.law*
Bryan Garcia, State Bar No. 216904
  *garcia@kiesel.law*
Ashley Conlogue, State Bar No. 292083
  *conlogue@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

*Attorneys for Plaintiffs*
*Armando Villanueva and Hortencia Sainz*

Dale K. Galipo, State Bar No. 144074
  *dalekgalipo@yahoo.com*
Renee V. Masongsong, State Bar No. 281819
  *rvalentine@galipolaw.com*
**LAW OFFICES OF DALE GALIPO**
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiff Francisco Orozco*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| ARMANDO VILLANUEVA and HORTENCIA SAINZ, individually and successor in interest to Pedro Villanueva, deceased and FRANCISCO OROZCO, individually, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; JOHN CLEVELAND; RICHARD HENDERSON, and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 8:17-cv-01302-JLS-KES <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY; DECLARATION OF D. BRYAN GARCIA IN SUPPORT THEREOF** <br><br> Date: September 3, 2021 <br> Time: 1:30 p.m. <br> Dept.: 10A – 10th Floor <br><br> Judge:  Hon. Josephine L. Staton |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND .................................................................... 3

III. LEGAL STANDARD .............................................................................. 5

IV. DISCUSSION ......................................................................................... 6

   A.  Mr. Fatzinger's Opinions Regarding the Speed/Time/Travel Path of the Silverado Are Scientifically Sound, Reliable, and Are Supported by the Evidence in this Case .................................................. 6

      a.  Ample Evidence Exists to Support Mr. Fatzinger's Opinion That the Silverado was Moving at a Speed of 3-5 Miles Per Hour ................................................................... 7

      b.  Ample Evidence Exists to Support Mr. Fatzinger's Opinion that the Silverado Took 16 Seconds from the Time the Silverado Struck the Parked Honda to the Time it Collided with the CHP Vehicle ................................ 7

      c.  Mr. Fatzinger's Opinions regarding the "Likely" Travel Path of the Silverado is Based on the Fact That There Is No Video Evidence of This Shooting, and Mr. Fatzinger's Opinions are Amply Supported by the Evidence in this Case ....................................................... 9

   B.  Plaintiffs' Ballistic Expert, David Balash's Opinions are Based on Reliable Methods and Evidence, and Therefore are Admissible ......... 10

      1.  The Undisputed Evidence Confirms that Sgt. Cleveland Was on the Passenger Side of the Silverado When He Fired His Two Shots ................................................................. 10

      2.  Mr. Balash's Opinion that Sgt. Cleveland Was Not in the Path of the Silverado When Ofc. Henderson Fired is Supported by the Evidence in this Case .................................. 11

      3.  Mr. Balash is Entitled to Rely of Plaintiff's Accident Reconstruction Expert as to the Speed of the Silverado ............. 11

      4.  Mr. Balash Does Not Intend On Offering Opinions as to What the Officer Defendants Perceived in the Moments of this Unjustified Shooting .......................................................... 12

   C.  Mr. DeFoe's Opinions are Based on Reliable Matters, Are Not Speculative or Contrary to the Evidence in this Case, And Should Be Allowed ........................................................................................ 12

      1.  Contrary to Defendants' Assertions, Each of Mr. DeFoe's Opinions are Admissible and Relevant to Plaintiffs' Causes of Action .............................................................................. 12

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

a. Mr. DeFoe Is Entitled to Rely and Comment on CHP and POST Training Policies As Relevant to Plaintiffs Excessive Force and Negligence Claims .......................... 12

    1) Police Practices and Procedures are Relevant to Plaintiffs' Excessive Force Claims ................... 12

    2) Police Policies are Relevant to Plaintiffs' Negligence Claim ...................................................... 14

b. The Policies Referenced by Mr. DeFoe are Relevant to this Case ................................................................ 14

c. An Expert May Refer to the Law in Expressing an Opinion ..................................................................... 14

2. Each of Mr. DeFoe's Opinions are Proper and Are Amply Supported by the Evidence in Record .......................... 15

a. The Evidence Confirms that the Officer Defendants Were Not Responding to a Serious Crime (Point #1) ...... 15

b. The Evidence Confirms that CHP Officers are Taught That Firearms Can Only Be Discharged Upon a "Reasonable Belief" that Deadly Force Must Be Used (Defense Point #2) .................................................. 16

c. The Evidence Confirms that CHP Policies Discourages Shooting at Moving Vehicles (Defense Point #3) ...................................................................... 17

d. DeFoe Decl. 13-16 (Defense Point #4) ............................ 17

e. Police Training Teaches Deadly Force Should Not Be Used Against Motor Vehicle (Defense Point #5) ....... 18

f. The Evidence Confirms that Decedent Pedro Villanueva Became Incapacitated by the Officer Defendants' Shots Causing the Silverado to Strike the Undercover CHP Vehicle (Defense Point #6) ........... 18

g. Officers Cannot Justify Shooting at a Moving Vehicle Simply Because Fleeing (Defense Point #7) ...... 19

h. The Evidence Supports Mr. DeFoe's Opinion that Sgt. Cleveland and Ofc. Henderson Should Have Known that a Front Seat Passenger Occupied the Silverado (Defense Point #8) .......................................... 19

i. The Officer Defendants Pre-Shooting Tactics (i.e. Failure to Establish Cover and Contact Officers) Should Be Allowed (Defense Point #9) and The Officer Defendants' Pre-Shooting Tactics in Failing to Establish Tactical Plan Should be Allowed (Defense Point #10) .......................................................... 20

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

j.   The Officer Defendants Violated Policy When They Conducted A Stop in Unmarked Vehicle (Defense Point #11) ...................................................................20

k.   It is Undisputed that CHP are Trained to Give a Warning Before Using Deadly Force if Time Allows (Defense Point #12)...........................................................21

l.   The Officer Defendants' Pre-Shooting Tactics in the Officer Defendants' Failure to Use the Public Address System in their Vehicle is Relevant and Should be Allowed (Defense Point #13).......................21

m.   The Officer Defendants' Pre-Shooting Tactics in Failing to Give Plaintiffs Time to Comply With their Commands is Relevant and Should be Allowed (Defense Point #14).........................................................21

n.   The Officer Defendants Unprofessional and Callous Attitude When they Used Profanity (Defense Point #15).....................................................................................22

o.   Bullet Point 16 is a Repetition of Prior Arguments .........22

3.   Mr. DeFoe is Entitled to Generally Speak to the Travel Path of the Silverado, as it Provides Foundation for his Ultimate Opinions.......................................................................................22

V.   EXCLUDING PLAINTIFFS' EXPERTS' OPINIONS WOULD PREJUDICE PLAINTIFFS................................................................23

VI.   IN THE ALTERNATIVE, PLAINTIFFS REQUEST A HEARING ON PLAINTIFFS' EXPERTS QUALIFICATIONS PRIOR TO GRANTING DEFENDANTS' MOTION ......................................................23

VII.   CONCLUSION .............................................................................................23

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

# TABLE OF AUTHORITIES

**Page**

<u>**FEDERAL CASES**</u>

Aquino v. Monterey Sheriff's Dept.
    2018 U.S. Dist. LEXIS 115675, at *2 (N.D. Cal. July 10, 2018) .................. 13

*DataQuill Ltd. v. High Tech Computer Corp.*,
    887 F. Supp. 2d 999, 1026 (S.D. Cal. 2011) ................................................. 11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579, 589 (1993) ................................................................................ 6

*FTC v. Qualcomm Inc.*,
    No. 17-CV-00220-LHK, 2018 U.S. Dist. LEXIS 212243, at *8 (N.D.
    Cal. Dec. 17, 2018) .......................................................................................... 6

*Grudt v. City of Los Angeles,*
    2 Cal. 3d 575(1970) ...................................................................................... 14

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998, 1016 (9th Cir. 2004) .............................................................. 15

*Hayes v. County of San Diego,*
    305 P. 3d 252, 255 (2013) ............................................................................. 14

*Interwoven, Inc. v. Vertical Computer Sys.*,
    CV 10-04645 RS, 2013 U.S. Dist. LEXIS 100790, 2013 WL 3786633,
    at *7 (N.D. Cal. July 18, 2013) ..................................................................... 12

*Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2017 U.S. Dist. LEXIS 57340, at *71 (N.D.
    Cal. Apr. 12, 2017) ........................................................................................ 11

*Lombardo v. City of St. Louis*,
    141 S. Ct. 2230, at 2241(June 28, 2021) ...................................................... 13

*Munoz v. Olin,*
    24 Cal. 3d 629, 634(1979) ............................................................................ 14

*Murray v. S. Route Maritime SA*,
    870 F.3d 915, 922 (9th Cir. 2017) .................................................................. 6

*Navarro v. Hamilton*,
    2017 U.S. Dist. LEXIS 38266, at *6 (C.D. Cal., Mar. 15, 2017) ................. 15

*Primiano v. Cook*,
    598 F.3d 558, 564 (9th Cir. 2010) .................................................................. 6

Scott v. Henrich,
    39 F.3d 912, 915-16 (9th Cir. 1994) ....................................................... 13, 14

*Tabares v. City of Huntington Beach*, 988 F. 3d 1119, 1125 (2020) ...................... 14

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

*United States v. 1014.16 Acres of Land, More or Less, Situated in Vernon*
    *Cnty., State of Mo.,*
    558 F. Supp. 1238, 1242 (W.D. Mo. 1983) *aff'd*, 739 F.2d 1371 (8th
    Cir. 1984) ...................................................................................................... 11

*United States v. Diaz,*
    876 F.3d 1194, 1198 (9th Cir. 2017) ............................................................ 15

*United States v. Sandoval-Mendoza,*
    472 F.3d 645, 654 (9th Cir. 2006) .................................................................. 6

**<u>RULES</u>**

Federal Rule of Evidence 702 ............................................................................. 5, 10

Fed. R. Evid. 703 ............................................................................................... 10, 11

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this civil rights case, Plaintiffs Francisco Orozco, Armando Villanueva and Hortencia Sainz ("Plaintiffs") seek damages against Defendants Sergeant Jon Cleveland, Officer Rich Henderson ("Officer Defendants"), and the State of California, by and through the California Highway Patrol (collectively "Defendants") because the Officer Defendants needlessly and unjustifiable fired fourteen (14) rounds into Pedro Villanueva's ("Decedent") Chevrolet Silverado ("Silverado"), killing Mr. Villanueva and severely injuring his passenger, Plaintiff Mr. Orozco.

To assist the jury, Plaintiffs have retained Accident Reconstruction Expert, Edward C. Fatzinger; Ballistics Expert, David E. Balash; and Police Practices Expert, Scott A. DeFoe (collectively "Plaintiffs' Experts"). Each of Plaintiffs' Experts' opinions draw from their substantial knowledge, experience, and expertise in their respective fields, as well as the facts and evidence in the present case.[1]   The opinions offered by Plaintiffs' Experts are reliable, and will assist the jury in understanding the facts and issues in this case. Plaintiffs' Experts have met the inquiry into the admissibility of their respective opinions, and Plaintiffs' Experts should be allowed to give their respective opinions to the jury. The Ninth Circuit's liberal application of the 702 and 703 requirements favors admission. Here, although Defendants may not like the opinions offered by Plaintiffs' Experts, their scattershot critiques all go to the weight of the evidence, rather than admissibility. Defendants are free to cross-examine Plaintiffs' Experts on their opinions. However they have provided no basis to exclude any of Plaintiffs' experts or testimony at trial.

---

[1]   It is significant that Defendants' Motion makes no argument that Plaintiffs' experts are not qualified in each of their respective areas of expertise – as Plaintiffs' experts are more than qualified. *See,* Copies of Plaintiffs' Experts' C.V.'s attached hereto as Ex. "1", "2", and "3" to Declaration of Bryan Garcia ("Garcia Decl.").

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**<u>Accident Reconstruction Expert Edward C. Fatzinger</u>**

Defendants have moved to exclude some of Mr. Fatzinger's opinions relating to (1) the speed of Plaintiffs' Silverado; (2) the potential amount of time it took for the Silverado to move from the parked Honda to the time it made contact with the Defendants' undercover CHP vehicle; and (3) and the potential travel path that the Silverado took from the parked Honda to the time it collided with the CHP's undercover vehicle.

There is no video of this shooting, as the Officer Defendants did not have body worn cameras, and their undercover CHP vehicle did not have MVARs equipment. Also, there is no event data recorder (aka "black box") information from the Silverado regarding the speed and/or direction of the Silverado in the moments before the Officer Defendants opened fire. The only evidence upon which Mr. Fatzinger can rely is the witness testimony and physical evidence in this case. In reaching his opinions, Mr. Fatzinger considered all witness testimony in this case, examined the physical evidence, and conducted his own analysis and simulation of the events. Mr. Fatzinger has met the inquiry into the admissibility of his opinions, and he should be allowed to give those opinions to the jury.

**<u>Ballistics Expert, David E. Balash:</u>**

Defendants attempt to exclude Mr. Balash's testimony as to (a) the location of Sgt. Cleveland (*i.e.* on the passenger side of the Silverado) when the Officer Defendants fired their respective shots, as well as (b) the speed/travel path of the Silverado at the time the Officer Defendants' shots were fired.

Physical evidence does not lie. In the present case, the physical evidence confirms that Sgt. Cleveland was on the passenger side of the Silverado (*i.e.* not in the path of the Silverado) when his two shots were fired through the passenger window. Defendants' own ballistics expert agrees that Sgt. Cleveland was on the passenger side of the Silverado when his two shots were fired. As such, the location of Sgt. Cleveland at the time he fired his two shots is beyond dispute. Moreover, as it

relates to the location of Sgt. Cleveland when Ofc. Henderson fired his twelve (12) shots, the evidence and testimony in this case confirms Sgt. Cleveland was out of the path of the Silverado when Ofc. Henderson's shots were fired. As it relates to the likely travel path of the Silverado, Mr. Balash relied on the accident reconstruction performed by Edward Fatzinger as foundation for his ultimate ballistic opinions, which he is entitled to do. As such, Mr. Balash meets the inquiry into the admissibility of his opinions subject to any cross-examination or rebuttal as Defendants see fit.

### Police Practices Expert, Scott A. DeFoe:

Defendants' Motion also attempts to exclude the opinions of Plaintiffs' police practices expert, Scott A. DeFoe, because Mr. DeFoe relies on CHP policies and training materials as foundation for his opinions. Contrary to Defendants' claims, Mr. DeFoe's reference to various police policies are relevant to Plaintiffs' excessive force and negligence causes of action, and each of the policies referenced by Mr. DeFoe is directly relevant to the facts of the present case. Although Defendants may not agree with Mr. DeFoe's opinions, he has met the inquiry into the admissibility of his opinions, and Defendants are free to challenge any of Mr. DeFoe opinions on cross-examination.

Plaintiffs respectfully request that this Court deny Defendants' Motion in its entirety. In the event that the Court is inclined to grant Defendants' Motion, Plaintiffs respectfully request a *Daubert* hearing so as to properly permit the parties and the Court to examine Mr. Fatzinger, Mr. Balash, and Mr. DeFoe as to their qualifications, and bases, for their respective opinions on these issues.

## II.   FACTUAL BACKGROUND

The present case involves an unreasonable and unjustified shooting by the Officer Defendants. On the evening of Sunday July 3, 2016, Pedro Villanueva was driving his father's red Chevrolet Silverado, with Mr. Orozco as his passenger. That same evening, the Officer Defendants were part of a CHP taskforce that was charged with breaking up "sideshow" activities – the informal exhibition of cars and trucks,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

usually involving vehicles performing "donuts."

The Officer Defendants were in an unmarked black Ford Taurus with tinted windows, which allowed them to approach the sideshows undetected, and conduct surveillance.[2] If the Officer Defendants identified potential traffic violators, CHP policies and procedures required that they call in uniformed officers in marked black and white police vehicles, since it was these uniformed officers (not the undercover Officer Defendants) who were charged with the responsibility of conducting traffic stops, pursuing potential violators, issuing citations and/or making arrests.

At around 10:30 p.m. on July 3, 2016, the Officer Defendants arrived at the Santa Fe Springs Swap Meet parking lot – a large, open and flat parking lot. At that time, the parking lot was occupied by approximately 20 vehicles – 18 of which were parked, and 2 of which were performing "donuts" in the otherwise empty lot. As they approached the parking lot, the Officer Defendants saw the Silverado doing "donuts."[3] Rather than calling for marked black and white vehicles to conduct the traffic stop, the Officer Defendants unilaterally decided to conduct a traffic stop of the Silverado by themselves in their unmarked vehicle, thereby violating CHP Policy.

The Officer Defendants followed the Silverado on side streets for nearly 5 miles. During most of this time, the lights and sirens of the undercover CHP vehicle were off (*i.e.* not activated). As the Officer Defendants followed the Silverado down Pritchard Avenue ("Pritchard"), the Officer Defendants did not have either their lights or sirens activated, and at no point did the Officer Defendants utilize their P.A. System

---

[2]   The Officer Defendants were in an undercover vehicle which was not equipped with an MVARS/video system, police markings, or overhead police lights.

[3]   This was the first time the Officer Defendants saw the Silverado. The Officer Defendants never ran the license plate of the Silverado – which was owned and registered to Pedro Villanueva's father – and never had an opportunity to identify Pedro Villanueva as the driver at any point until after the shooting. As such, the only basis for pursuing Mr. Villanueva was for the "donuts" observed in the empty Santa Fe Springs Swap Meet parking lot.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

on their undercover CHP vehicle.

Given that Pritchard was a dead-end street, the Silverado began to reverse out of MacArthur to make a three-point turn to face southbound onto Pritchard. The Silverado reversed in a straight manner (*i.e.* not an "S" turn).[4]  The Silverado was approximately 15 to 20 feet away from the undercover CHP vehicle at this point in time.

Although Ofc. Henderson claims to have yelled "police" as well as commands to the Silverado driver to show his hands, witnesses testified that they did not hear "police" verbalized before shots were fired. A witness thought Decedent and Mr. Orozco were being "jacked," or robbed, and multiple witnesses heard Ofc. Henderson yell "stop motherfucker" before the shooting.

The Silverado had not moved, or only moved a little bit before shots were fired. As the Silverado approached, Sgt. Cleveland fired 2 shots through the passenger window of the Silverado, one of which struck the driver, Decedent, Pedro Villanueva. Ofc. Henderson fired because he thought Sgt. Cleveland was in the path of the Silverado, although he admitted that he did not know Sgt. Cleveland's location during any of his 12 shots. Ofc. Henderson aimed and shot where he thought the driver to be as he fired his 12 shots.

The Silverado slowed down, and came to rest against the undercover CHP vehicle. Decedent died from his wounds, and Mr. Orozco was severely injured after being struck by a bullet.

## III.   LEGAL STANDARD

"Federal Rule of Evidence 702 allows admission of 'scientific, technical, or other specialized knowledge' by a qualified expert if it will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *FTC v. Qualcomm Inc.*, No.

---

[4]   As the Silverado did so, the undercover CHP vehicle was parked on the southwest corner of Pritchard and Mac Arthur Avenue.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

17-CV-00220-LHK, 2018 U.S. Dist. LEXIS 212243, at *8 (N.D. Cal. Dec. 17, 2018) (quoting Fed. R. Evid. 702). "Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). "Because of the fluid and contextual nature of the inquiry, district courts are vested with 'broad latitude' to 'decid[e] *how* to test an expert's reliability' and '*whether or not* [an] expert's relevant testimony is reliable.'" *Id.* (quoting *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017).

"Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)); *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 U.S. Dist. LEXIS 212243, at *10 (N.D. Cal. Dec. 17, 2018).

## IV.   DISCUSSION

### A.   Mr. Fatzinger's Opinions Regarding the Speed/Time/Travel Path of the Silverado Are Scientifically Sound, Reliable, and Are Supported by the Evidence in this Case

Mr. Fatzinger has reviewed the relevant evidence in this case, as he has reviewed the depositions of all the witnesses to this unjustified shooting, has inspected the Silverado, has conducted research on the Silverado's turning radius and idle speed, and has conducted accident reconstruction analysis through PC-Crash. *See* Garcia Decl., Ex. "4" (Fatzinger Expert Report) and "5" (Fatzinger Declaration). As such, Mr. Fatzinger's opinions meet the requirements set forth in Rules 702 and 703, and his testimony should be allowed. Although Defendants may not agree with Mr. Fatzinger's opinions, any disagreement as to Mr. Fatzinger's opinions are more

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

properly addressed via contradictory evidence or cross-examination, not exclusion.

a. <u>Ample Evidence Exists to Support Mr. Fatzinger's Opinion That the Silverado was Moving at a Speed of 3-5 Miles Per Hour</u>

Ample evidence exists to support Mr. Fatzinger's opinion that the Silverado was travelling at a speed of 3 to 5 miles per hour, including the following:

- Plaintiff Orozco testified that the Silverado was only travelling at no more than 5 miles per hour. Garcia Decl., Ex. "6" (F. Orozco Dep. Tr. 78:16-23);

- Ofc. Henderson testified that the Silverado was approaching at less than 10 miles per hour. Garcia Decl., Ex. "7" (Ofc. Henderson Dep. Tr. 60:22-25);

- Witness Hinkle testified that the Silverado was not moving before shots were fired. Garcia Decl., Ex. "8" (Hinkle Dep. Tr. 24:17-26:2).

- Witness Hinkle testified that the Silverado never accelerated toward the CHP vehicle in any threatening way before the shooting. *Id.* at 21:6-9;

- Witness Mendez testified that he never heard the Silverado "rev" its engine or squeal its tires, and never saw anything that the Silverado was never accelerating towards the CHP vehicle. Garcia Decl., Ex. "9" (Mendez Dep. Tr. 22:-14);

- Witness Estrada confirms that there were no sounds of accelerating toward the CHP vehicle. Garcia Decl., Ex. "10" (Estrada Dep. Tr. 13:2-11); and

- A test of a similar model Silverado, Mr. Fatzinger documented the idle speed of the Silverado at 4.2 miles per hour. Garcia Decl., Ex. "11" (Fatzinger Dep. Tr. at 25:2-10);

Mr. Fatzinger utilized his expertise and skill in performing calculations and accident reconstruction utilizing PC-Crash to arrive at his opinions. *Id.* at 20:4-21:3. Accordingly, it is abundantly clear that Mr. Fatzinger's opinions are not speculative, and any disagreement as to the conclusions reached by Mr. Fatzinger should be addressed by cross-examination, not exclusion.

b. <u>Ample Evidence Exists to Support Mr. Fatzinger's Opinion that the Silverado Took 16 Seconds from the Time the Silverado Struck the Parked Honda to the Time it Collided with the CHP Vehicle</u>

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    Mr. Fatzinger has an ample basis for support his opinion that it took 16-17

2 seconds for the Silverado to travel from the Honda to the time it collided with the

3 undercover CHP vehicle.[5] In deposition, Mr. Fatzinger testified that in reaching this

4 opinion, he relied on the testimony of Sgt. Cleveland and Ofc. Henderson for the

5 manner in which the Silverado reversed, as well as the travel path of the Silverado as

6 drawn by Sgt. Cleveland, which confirms the Silverado reversed in a straight direction

7 (*i.e.* not an "S" turn as proffered by Defendants). *Id.* at 37:21-38:15).



16  Garcia Decl., Ex. 12 (Cleveland Dep., Ex. 6)

17    Based on the straight reverse travel path of the Silverado, and in analyzing the

18 turning radius of the Silverado as indicated by the relevant GM manuals, Mr.

19 Fatzinger determined that the Silverado could not make the turn toward its ultimate

20 location of rest in one turn. As such, Mr. Fatzinger concluded that two turning

21 movements were required for the Silverado to reach its point of rest.[6]

22    After considering this evidence, Mr. Fatzinger utilized the Silverado

23

24 ────────────────

25 [5]    Again, it should be noted that there is no video of this incident as the undercover CHP vehicle was not equipped with an MVARs system, and the undercover Officer

26 Defendants did not have body cameras. The only evidence which is available is independent witness testimony, physical evidence, etc.

27 [6]    Independent witness Thomas Hinkle and Plaintiff Orozco also supported Mr.

28 Fatzinger's opinions in this regard. *Id.* at 50:5-51:1.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

manufacturer's specifications for the idle speed of the Silverado. Garcia Decl., Ex. "11" at 25:17-20; 25:5-11. Based on this travel path, idle speed and turning radius for the Silverado, Mr. Fatzinger utilized his expertise and skill, as well as accident reconstruction software of PC-Crash, to arrive at his opinions. *Id.* at 20:4-21:3. It was through this consideration of the evidence, and analysis, that Mr. Fatzinger was able to arrive at his opinion as to the amount of time that it took for the Silverado to make contact with the undercover CHP vehicle. As such, Mr. Fatzinger's opinion in this regard is sufficiently reliable.

> c. <u>Mr. Fatzinger's Opinions regarding the "Likely" Travel Path of the Silverado is Based on the Fact That There Is No Video Evidence of This Shooting, and Mr. Fatzinger's Opinions are Amply Supported by the Evidence in this Case</u>

Defendants claim that the direction of travel of the Silverado is not accurate because Mr. Fatzinger opines as to the "likely" travel path of the Silverado. As is undisputed here, no video captured the travel path of the Silverado. As such, Mr. Fatzinger's opinion in this regard is based on the testimony of the witnesses in this case, the physical evidence, and his extensive experience in the field of accident reconstruction. Specifically,

- Sgt. Cleveland testified that the Silverado reversed in a straight manner (not an "S" turn) and impacted a parked vehicle. Garcia Decl., Ex. "12" at 87:4-7;

- The photograph of the Silverado as depicted by Sgt. Cleveland confirms that the Silverado did not make an "S" turn;

- Independent Witness Hinkle testified that the Silverado reversed, pulled forward, reversed and then pulled forward again. Garcia Decl., Ex. "8" at 34:13-35:2; and

- Plaintiff Orozco testified that Decedent, wanted to do a "K" turn. Garcia Decl., Ex. "6" at 66:17-19.

Taking this testimony, combined with the totality of the evidence reviewed, Mr. Fatzinger arrived at his opinion as to the likely travel path of the Silverado. *Id.* at 37:21-38:15; 39:9-25. Taken all together, it is clear that Mr. Fatzinger's opinions and testimony are sufficiently relevant and reliable under the federal rules.

OPPOSITION TO DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**B.      Plaintiffs' Ballistic Expert, David Balash's Opinions are Based on Reliable Methods and Evidence, and Therefore are Admissible**

Plaintiffs' ballistics expert, David E. Balash's opinions meet the requirements of Rules 702 and 703 as they are adequately based on the facts and evidence of this case, as well as his skill, experience, training and education. Garcia Decl., Ex. "13" (Balash Expert Report) and "14" (Balash Declaration).

1.      <u>The Undisputed Evidence Confirms that Sgt. Cleveland Was on the Passenger Side of the Silverado When He Fired His Two Shots</u>

David Balash has offered the opinion that Sgt. Cleveland was on the passenger side of the Silverado (i.e. not in the Silverado's path) when he fired his 2 shots through the passenger window of the Silverado. In rendering this opinion, Mr. Balash has examined extensive evidence in this case, including physically inspecting the Silverado (and the resulting bullet holes), as well as reviewing the investigation performed by the CHP which determined that after entering through the passenger side of the Silverado, one of Sgt. Cleveland's bullets struck the driver, Decedent Villanueva, in the right chest area. Garcia Decl., Exhibit "15" (CHP Officer Involved Shooting Investigation). Mr. Balash also considered the grouping of Sgt. Cleveland's shell casings, which were in close proximity to one another.

Based on this evidence, Mr. Balash concluded that Sgt. Cleveland was stationary (i.e. not running for his life) and not running when he fired his shots. Garcia Decl., Ex. "16" (Balash Dep. Tr. 74:8-23). The fact that Sgt. Cleveland was out of the path of the Silverado when he fired his 2 shots is undisputed as Defendants' Ballistic Expert, Rocky Edwards testified as follows:

> Q.    So Sergeant Cleveland would obviously have to be in a position
>        when he fired the shots such that his shots would have been
>        able to come through the passenger side window, and we know
>        at least one of them struck Mr. Villanueva?
> A.    Correct.
> Q.    So that would generally put Sergeant Cleveland on the
>        passenger side of the truck when he fired?
> A.    Exactly.

OPPOSITION TO DEFENDANTS MOTION TO
                                                                 EXCLUDE EXPERT TESTIMONY

1   Garcia Decl., Exhibit "17" (Edwards Dep. Tr. 31:9-17).

2   Mr. Balash's opinions in this regard are sufficiently based on the evidence in

3   this case, and are directly relevant to Plaintiffs' claims that Sgt. Cleveland's shots

4   were unreasonable and unjustified.

5         2.   <u>Mr. Balash's Opinion that Sgt. Cleveland Was Not in the Path of the Silverado When Ofc. Henderson Fired is Supported by the Evidence in this Case</u>

6

7   Mr. Balash's opinion that Sgt. Cleveland was not in the path of the Silverado

8   when Ofc. Henderson fired his shots is supported by the facts and evidence in this

9   case.  Specifically,

10

11      • Sgt. Cleveland testified that he started "jogging" toward the west curbline of the street as soon as the Silverado started moving forward, and it only took a couple of seconds for him to get to the curbline. Garcia Decl., Ex. "12" at 98:20-99:12; and

12

13      • Ofc. Henderson testified that that the Silverado had moved 15-30 feet forward before he fired his first shot.  *See,* Garcia Decl., Ex. "7" at 41:10-23.

14

15   Consequently, it is abundantly clear that Mr. Balash has adequate foundation

16   for his opinions in this regard, and these opinions are directly relevant to Plaintiffs'

17   claims that Sgt. Cleveland's shots were unreasonable and unjustified.

18         3.   <u>Mr. Balash is Entitled to Rely of Plaintiff's Accident Reconstruction Expert as to the Speed of the Silverado</u>

19

20   It is well established that experts may rely upon the opinions of other experts.

21   *See,* Fed. R. Evid. 703; *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420

22   YGR, 2017 U.S. Dist. LEXIS 57340, at *71 (N.D. Cal. Apr. 12, 2017) *DataQuill Ltd.*

23   *v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1026 (S.D. Cal. 2011) ("It is

24   routine and proper for a damages expert in a technical patent case to rely on a technical

25   expert for background."); *United States v. 1014.16 Acres of Land, More or Less,*

26   *Situated in Vernon Cnty., State of Mo.*, 558 F. Supp. 1238, 1242 (W.D. Mo.

27   1983) *aff'd*, 739 F.2d 1371 (8th Cir. 1984) (reasonable to expect that experts will rely

28   on the opinion of experts in other fields as background material, as permitted by FRE

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

703); *Interwoven, Inc. v. Vertical Computer Sys.*, CV 10-04645 RS, 2013 U.S. Dist. LEXIS 100790, 2013 WL 3786633, at *7 (N.D. Cal. July 18, 2013) ("Experts are, however, permitted to rely on hearsay evidence in coming to their conclusions, so long as an expert in the field would reasonably rely on that information").

Mr. Balash does not intend on offering his own, independent analysis of the speed of the Silverado.  Rather, Mr. Balash bases his opinions, in part, on the opinions expressed by Plaintiff's accident reconstruction expert, which is entitled to do.

### 4. Mr. Balash Does Not Intend On Offering Opinions as to What the Officer Defendants Perceived in the Moments of this Unjustified Shooting

Contrary to Defendants assertion to this Court, Mr. Balash is not a human factors expert, and does not intend on offering any opinion as to what the Officer Defendants purportedly perceived during the events of the Officer Defendants' unjustified shooting. Accordingly, Defendants' contention in this regard is moot.

### C. Mr. DeFoe's Opinions are Based on Reliable Matters, Are Not Speculative or Contrary to the Evidence in this Case, And Should Be Allowed

Scott DeFoe is Plaintiffs' police practices expert. In arriving at his ultimate opinions in this case, Mr. DeFoe considered CHP's policies, Police Officer Standard Training ("POST") standards, as well as voluminous amount of evidence in rendering his opinions. Garcia Decl., Ex. "18" (DeFoe Expert Report) and "19" (DeFoe Declaration).

#### 1. Contrary to Defendants' Assertions, Each of Mr. DeFoe's Opinions are Admissible and Relevant to Plaintiffs' Causes of Action

##### a. *Mr. DeFoe Is Entitled to Rely and Comment on CHP and POST Training Policies As Relevant to Plaintiffs Excessive Force and Negligence Claims*

Contrary to Defendants representations to the Court, Mr. DeFoe's reliance on CHP and POST training is relevant to both Plaintiffs' excessive force and negligence claims for the reasons set forth below.

###### 1) *Police Practices and Procedures are Relevant to*

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Excessive Force Claims*

In *Lombardo v. City of St. Louis*, 141 S. Ct. 2230 (June 28, 2021), the United States Supreme Court has recently confirmed that police policies are relevant in considering claims of excessive force.  Specifically, the United States Supreme Court in *Lombardo* stated, in relevant part:

> In assessing a claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham* v. *Connor*, [**612] 490 U. S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "A court (judge or jury) cannot apply this standard mechanically." *Kingsley* v. *Hendrickson*, 576 U. S. 389, 397, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U. S., at 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U. S., at 397, 135 S. Ct. 2466, 192 L. Ed. 2d 416. . . .

*Lombardo*, 141 S. Ct. at 2241 (Emphasis Added).

In applying the law to the facts of that case, the Supreme Court made it abundantly clear in Lombardo that police training and policies are relevant to the appropriate Fourth Amendment law analysis. Id. The Ninth Circuit has also held that CHP and POST training materials are relevant to an excessive force claim, and whether an officer's actions were objectively reasonable. Aquino v. Monterey Sheriff's Dept. 2018 U.S. Dist. LEXIS 115675, at *2 (N.D. Cal. July 10, 2018) (denying Motion in Limine to Exclude P.O.S.T. Standards). Moreover, internal police guidelines may be relevant in determining whether use of force is objectively reasonable in an excessive force claim. Scott v. Henrick 39 F. 3d 912, 915 (9th Cir. 1994).  Specifically, the Scott court stated:

> Assuming internal police guidelines are relevant to determining whether use of force is objectively reasonable, [citations omitted], they are relevant only

OPPOSITION TO DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

when one of their purposes is to protect the individual against whom force is used. Thus, if a police department limits the use of chokeholds to protect suspects from being fatally injured, [citations omitted], or restricts the use of deadly force to protect suspects from being shot unnecessarily, [citations omitted], such regulations are germane to the reasonableness inquiry in an excessive force claim.

Scott v. Henrich, 39 F.3d 912, 915-16 (9th Cir. 1994)

Accordingly, it is abundantly clear that Mr. DeFoe is entitled to refer to, and rely upon, police training in opining as to whether the force used by the Officer Defendants was excessive.

2) *Police Policies are Relevant to Plaintiffs' Negligence Claim*

Under California negligence law, "a plaintiff must show that a defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate cause of the resulting injury." *Tabares v. City of Huntington Beach*, 988 F. 3d 1119, 1125 (2020) quoting *Hayes v. County of San Diego*, 305 P. 3d 252, 255 (2013). "[O]fficers have a duty to act reasonably when using deadly force. *Hayes, supra* at 255 citing *Munoz v. Olin,* 24 Cal. 3d 629, 634(1979) . The reasonableness of an officer's conduct is determined in light of the totality of the circumstances. *Id.* citing *Grudt v. City of Los Angeles,* 2 Cal. 3d 575(1970). Under California law, the officer's unreasonable pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of shooting might be reasonable in isolation. *Tabares, supra* at 1125.

b. *The Policies Referenced by Mr. DeFoe are Relevant to this Case*

All of the policies refenced by Mr. DeFoe are germane to the facts of the present case, and thus Mr. DeFoe should be allowed as they are relevant to Plaintiffs' claims, and Defendants are free to cross-examine Mr. DeFoe on these policies at trial.

c. *An Expert May Refer to the Law in Expressing an Opinion*

The Ninth Circuit has recognized that "[a]lthough the value of expert testimony

OPPOSITION TO DEFENDANTS MOTION TO
EXCLUDE EXPERT TESTIMONY

lies in the specialized knowledge that an expert brings to bear on an issue in dispute… it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *Navarro v. Hamilton*, 2017 U.S. Dist. LEXIS 38266, at *6 (C.D. Cal., Mar. 15, 2017) citing *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017). "Accordingly, at times, an expert may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the [trier of fact] in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Navarro*, 2017 U.S. Dist. LEXIS 14193, at *6 (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). Mr. DeFoe does not intend on offering opinions as to the ultimate legal issues in a case. That said, Mr. DeFoe is entitled to refer to the law as doing so provides foundation for his opinions, and will be helpful to the jury.

2. Each of Mr. DeFoe's Opinions are Proper and Are Amply Supported by the Evidence in Record

As more fully set forth below, each of Mr. DeFoe's opinions which are being attacked by Defendants are relevant, appropriate and are amply supported by the evidence in this case.

a. *The Evidence Confirms that the Officer Defendants Were Not Responding to a Serious Crime (Point #1)*

The evidence in this case confirms that the Officer Defendants were not responding to a serious crime. Specifically, Sgt. Cleveland testified that he originally approached the Silverado because it was doing "donuts" in the open, flat parking lot of the Santa Fe Springs Swap Meet. *See,* Ex. "12" at 43:8-44:19. The Dispatcher, Nekaya Cornelison, who received the call from the Officer Defendants testified that the Officer Defendants' original call was a result of "street racing." Garcia Decl., Ex. "20" (Cornelison Dep. Tr. 15:6-16). Street racing is usually a misdemeanor, thus not a serious crime.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1   Ms. Cornelison also testified that the Officer Defendants relayed to her that

2   they were "Attempting to Overtake" the Silverado, which indicates that the Officer

3   Defendants were attempting to catch up to a vehicle that was exceeding the speed

4   limit. *Id.* at 16:3-25. Further, dispatch received no request to change the status of the

5   call from the Officer Defendants until after the shooting, which occurred six minutes

6   later. *Id.* at 18:4-14; 39:18-25. Accordingly, there is ample evidence to support Mr.

7   DeFoe's opinion that the Officer Defendants were not responding to a serious crime

8   when they initially made contact with the Silverado, and Mr. DeFoe's opinion in this

9   regard is relevant in relation to the excessive force and negligence claims against

10   Defendants.

11                     b.   *The Evidence Confirms that CHP Officers are Taught That*
12                          *Firearms Can Only Be Discharged Upon a "Reasonable*
                            *Belief" that Deadly Force Must Be Used (Defense Point #2)*

13   The evidence in this case supports Mr. DeFoe's opinion that deadly force is

14   only justified on the basis of an "objectively reasonable" officer.  CHP's own policy

15   on Discharge of Firearms states that an officer may only discharge a firearm when:

16           the officer has a <u>reasonable belief</u> that the use of deadly
             force in necessary for self-defense or to defend another
17           person from <u>immediate serious bodily harm.</u>

18   Garcia Decl., Ex. "21" (CHP Policy on Discharge of Firearms).

19   The CHP's Use of Force policies and procedures then define term "objectively

20   reasonable." Garcia Decl., Ex. "22" (CHP Policy on Use of Force). Defendants own

21   police practices expert, Clarence Chapman, agrees that subjective fear alone is

22   insufficient to justify use of force, including the use of deadly force.  Garcia Decl.,

23   Ex. "23" (Chapman Dep. Tr. 23:10-18). Moreover, it appears that if the jury accepts

24   Plaintiffs' contentions as true, Defendant Henderson would agree that his actions were

25   not objectively reasonable as he testified as follows:

26           Q.   If hypothetically -- again, I'm giving you another
                  hypothetically -- you knew that your partner was
27                out of the path of the vehicle, would you have shot
                  if you had known that?
28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

|   |   |   |
|---|---|---|
| A. | | Are you asking me if I knew for a fact that my partner was not in jeopardy and not in the threat of a moving vehicle that was accelerating towards him if I would have fired my weapon? |
| Q. | | That's my question. |
| A. | | No, I would not have. |
| Q. | | And why not based on your training? |
| A. | | **Because it's immoral, illegal, and against policy.** |

Garcia Decl., Ex. "7" (Henderson Dep. Tr. 57:10-22) (emphasis added).

The relevant training policies are relevant to Plaintiffs' claims as confirmed by the evidence, including the testimony of Ofc. Henderson and Defendants' police practices expert, Clarence Chapman. As such, Mr. DeFoe should be allowed to express these opinions as they will be helpful to the jury.

### c. *The Evidence Confirms that CHP Policies Discourages Shooting at Moving Vehicles (Defense Point #3)*

Mr. DeFoe's opinion that police policies discourage shooting at moving vehicles is also grounded in the evidence in this case, and is relevant to Plaintiffs' causes of action for excessive force and negligence. Specifically, CHP policy mandates that "Officers shall not stand and/or step directly in front of or directly behind a vehicle in an attempt to impede its movement (prevent escape)…" Garcia Decl., Ex. "21". CHP policy also teaches that shooting at a moving vehicle could disable the driver. Garcia Decl., Ex. "12" at 117:14-22; 118:20-25. Ofc. Henderson testified that he was trained not to shoot at a vehicle merely because it was moving in direction of a person. Garcia Decl., Ex. "7" at 13:8-11. Defendants' police practices expert, Clarence Chapman agrees that policy discourages shooting at moving vehicle unless the vehicle poses an immediate threat. Garcia Decl., Ex. "23" at 29:19-23:30:25. The fact that policy discourages shooting at moving vehicles will provide assistance to the jury in considering the facts of whether this shooting was unjustified.

### d. *DeFoe Decl. 13-16 (Defense Point #4)*

Paragraph 13 of Mr. DeFoe's Declaration states that per basic training, officers should not place themselves or remain in the path of a moving vehicle. This opinion

OPPOSITION TO DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY

is supported by CHP's policies, as well as the testimony of the Officer Defendants themselves. Moreover, as it relates to the remainder of Mr. DeFoe's opinions, these issues have been amply addressed in sections 4.c and e herein.

> e. *Police Training Teaches Deadly Force Should Not Be Used Against Motor Vehicle (Defense Point #5)*

As more fully set forth above in section 4.c, police training policies discourage shooting at moving vehicles. Moreover, Sgt. Cleveland also agrees that officers are trained not to stand in front of or behind vehicle trying to leave scene; should try to get out of way of vehicle; and if the officer is in a position of risk, he or she should get out of the way of the vehicle. *See e.g.* Garcia Decl., Ex. "12" (Cleveland Dep. Tr. at 96:8-17; 96:22-25; and 101:13-17).

Sgt. Cleveland was never in a position of risk as he testified that he was "jogging" to the west curb line (*i.e.* not running for his life). Garcia Decl., Ex. "12" at 109:5-14. Sgt. Cleveland also testified that never had to dive out of the way; never fell to the ground; and did not have any physical injury as he "jogged" away. *Id.* at 107:1-7. Because Sgt. Cleveland was not in the path of the Silverado during any of the shots, he was never about to be struck by the Silverado. *Id.* at. 98:25-99:5; *see also,* Garcia Decl., Ex. "14" (Balash Decl.) at ¶¶ 9-12; Ex. "24" (Orozco Decl.) at ¶¶ 23-25. This policy is relevant to the facts of the present case, and provide support for Plaintiffs' claims that this shooting was both unreasonable and unjustified.

> f. *The Evidence Confirms that Decedent Pedro Villanueva Became Incapacitated by the Officer Defendants' Shots Causing the Silverado to Strike the Undercover CHP Vehicle (Defense Point #6)*

The evidence in this case also supports Mr. DeFoe's opinion that Mr. Villanueva became incapacitated by the Officer Defendants' shots. Specifically, Ofc. Henderson fired twelve shots, all of which were fired before the Silverado impacted the CHP vehicle. Garcia Decl., Ex. "7" at 13:12-15; 15:23-25.  It was 1 to 5 seconds after Ofc. Henderson fired 12 shots that Silverado impacted CHP vehicle. *Id.* at 16:11-15. Ofc. Henderson testified that he was trying to strike the driver of the Silverado.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

*Id.* at 49:2-4.[7]  After he fired his shots, Ofc. Henderson reloaded his weapon – at this point the vehicle was slowing down and coasting to rest against the CHP vehicle. *Id.* at 74:7-16. Witness testimony confirms that Decedent, Pedro Villanueva laid to the side after being hit by the shots. Garcia Decl.,Ex. "8" at 29:10-21. As such, the evidence amply supports the position that Decedent  became incapacitated as a result him being shot by the Officer Defendants, causing him to lose control of the Silverado.

g. *Officers Cannot Justify Shooting at a Moving Vehicle Simply Because Fleeing (Defense Point #7)*

Defendants' police practices expert agrees that officers cannot justify shooting at a moving vehicle which is fleeing. Garcia Decl., Ex. "23" at 25:23-26:4. The evidence confirms that there was more than enough space for the Silverado to travel down Pritchard without striking the CHP vehicle, and it appeared the Silverado was intending to pass the undercover CHP vehicle. Garcia Decl., Ex. "24" at ¶24. Accordingly, opinions and/or references to policies that it is not proper to shoot at vehicles which are fleeing are both relevant, and admissible.

h. *The Evidence Supports Mr. DeFoe's Opinion that Sgt. Cleveland and Ofc. Henderson Should Have Known that a Front Seat Passenger Occupied the Silverado (Defense Point #8)*

It is abundantly clear that the evidence supports Mr. DeFoe's opinion that the Officer Defendants should have known that Mr. Orozco occupied the passenger seat of the Silverado. Specifically, an independent witness knew there was a passenger in the Silverado. Garcia Decl., Ex. "8" at 29:10-12. The headlights were on the undercover CHP vehicle were activated. *Id.* at 71:20-22. Moreover, Sgt. Cleveland's weapon had a flashlight, which he was using at the time of the shooting. Garcia Decl.,

---

[7] The OCCL determined that Ofc. Henderson's shots struck Decedent, Pedro Villanueva in the head and clavicle. Garcia Decl.,Ex. "15".

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Ex. "12" at 31:15-19; 91:7-21. Cleveland's shots went through the passenger window, and he was looking at the passenger side of the truck. *Id.* at 71:3-5; 90:14-17. After the shooting, the Officer Defendants were able to observe a passenger in the Silverado. *Id.* at 121:16-21; *see also,* Garcia Decl., Ex. "7" at 75:5-10. Accordingly, there is ample evidence to support Mr. DeFoe's position that the Officer Defendants should have known that there was a passenger in the front passenger seat of the Silverado at the time of the shooting. This opinion is relevant to Defendants' pre-shooting tactics, and the unreasonable nature of this shooting.

       i.   *The Officer Defendants Pre-Shooting Tactics (i.e. Failure to Establish Cover and Contact Officers) Should Be Allowed (Defense Point #9) and The Officer Defendants' Pre-Shooting Tactics in Failing to Establish Tactical Plan Should be Allowed (Defense Point #10)*

As more fully set forth above, Mr. DeFoe's opinions regarding the pre-shooting tactics of the Officer Defendants is relevant to Plaintiffs' excessive force and negligence claims. While Defendants may dislike any such opinions, Mr. DeFoe should be allowed to express those opinions at trial where they are more properly addressed by rebuttal, not exclusion.

       j.   *The Officer Defendants Violated Policy When They Conducted A Stop in Unmarked Vehicle (Defense Point #11)*

Defendants claim that "Mr. DeFoe does not cite any CHP policy that prohibits a sworn peace officer in an unmarked vehicle and in plain clothes from conducting a stop (because there is no such policy)." *See* Motion at 9:19-25. However, Defendants fail to fully cite Mr. DeFoe's Declaration, which references CHP HPM 70.6, (CHP-01832-1833) which states, in relevant part, that "a marked black and white vehicle, other than a motorcycle should take over a pursuit from an unmarked vehicle or Specially Marked Patrol Vehicle. Garcia Decl., Ex. "18" at ¶23. This policy also states that 'when practical, a marked black and white patrol vehicle with overhead emergency lights shall take over the pursuit from a patrol vehicle equipped with only a red spotlight or red spotlight/center mounted light combination.'" *Id.* at ¶23. Also,

OPPOSITION TO DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY

Sgt. Zavala testified that it was the policy for black and white vehicles, not undercover vehicles, to conduct traffic stops for this CHP detail. Garcia Decl., Ex. "25" (Zavala Dep. Tr. 16:11-17:4; 21:7-9; and 18:16-19:2). This evidence is relevant to the Officer Defendants' pre-shooting tactics, as well as the unreasonable nature of the shooting.

          k.    *It is Undisputed that CHP are Trained to Give a Warning Before Using Deadly Force if Time Allows (Defense Point #12)*

It is well established that whenever practicable, a warning must be given before deadly force is employed, as a failure to warn before using deadly force could be unreasonable, unless impracticable. *Tabares v. City of Huntington Beach, supra* at 1129 (citing *Harris v. Roderick,* 126 F. 3d 1189, 1201 (9thCir. 1997)).  CHP policy states that "the officer should give an audible warning, if feasible, prior to utilizing deadly force in an apprehension situation." Garcia Decl., Ex. "21" (CHP Policy on Discharge of Firearms Policy at CHP-1800). Moreover, Defendants' police practices expert agrees POST trains that warning should be given, if feasible, before deadly force is used. Garcia Decl., Ex. "23" at 22:23-23:3. Here, witnesses testified that the Officer Defendants never gave a warning and, as such, this policy is relevant to the facts of this case.

          l.    *The Officer Defendants' Pre-Shooting Tactics in the Officer Defendants' Failure to Use the Public Address System in their Vehicle is Relevant and Should be Allowed (Defense Point #13)*

It is undisputed that the Officer Defendants never used the Public Address ("PA") system on their undercover CHP vehicle. Garcia Decl., Ex. "12" at 76:1-13. This evidence is relevant to the Officer Defendants' deficiencies in their pre-shooting tactics, and should be allowed.

          m.    *The Officer Defendants' Pre-Shooting Tactics in Failing to Give Plaintiffs Time to Comply With their Commands is Relevant and Should be Allowed (Defense Point #14)*

As stated above, the Officer Defendants were trained to give a warning to comply if time allowed. Both Cleveland and Henderson failed to give a warning to

OPPOSITION TO DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Plaintiffs that they were going to use deadly force. Garcia Decl., Ex. "26" (Henderson Interview Transcript) at  CHP 01052; *see also,* Garcia Decl. Ex. "7" at 36:4-16, 58:24-59:8; Ex. "12" at 117:11-13. Moreover, witnesses testified that the Officer Defendants never verbally identified themselves as officers. Garcia Decl., Ex. "9" at 23:22-25, 31:11-14; *see also,* Garcia Decl. Ex. "27" (A. Orozco Dep. Tr. 15:18-16:2). In fact, one witness thought that the passengers in the Chevrolet Silverado were being "jacked" by the individuals in the dark sedan. *Id.* at 35:5-16. Mr. DeFoe's opinion is relevant to allow the jury to consider the unreasonable nature of the Officer Defendants actions, and should be allowed.

n. *The Officer Defendants Unprofessional and Callous Attitude When they Used Profanity (Defense Point #15)*

Mr. DeFoe's opinions as to the attitude utilized by the Officer Defendants in this regard is relevant to the pre-shooting tactics which they used. Mr. DeFoe's opinions in this regard should not be excluded, and Defendants will have the opportunity to cross-examine Mr. DeFoe on these opinions at trial.

o. *Bullet Point 16 is a Repetition of Prior Arguments*

As Defendants' Motion concedes, bullet point 16 addresses the statements of Scott DeFoe in paragraph 29 of his Declaration, which is a repetition of arguments addressed above.  As such, Plaintiffs would direct the Court to Plaintiffs' arguments already made herein.

3. Mr. DeFoe is Entitled to Generally Speak to the Travel Path of the Silverado, as it Provides Foundation for his Ultimate Opinions

Mr. DeFoe's opinions regarding the general travel path of the Silverado are based on his review of the evidence, as well as the accident reconstruction performed by Mr. Fatzinger. The law allows Mr. DeFoe to discuss the travel path/speed of the Silverado as this provides foundation for his opinions.

/ / /

/ / /

**V.   EXCLUDING PLAINTIFFS' EXPERTS' OPINIONS WOULD PREJUDICE PLAINTIFFS.**

Excluding Plaintiffs' experts' opinions would be unfair and prejudicial to Plaintiffs. Defendants have retained their own experts in accident reconstruction, ballistics, and police practices, and Plaintiffs are entitled to present expert testimony to rebut Defendants' expert testimony on the issue. If the Court is inclined to grant Defendants' motion, the same ruling should apply equally to Defendants' experts.

**VI.   IN THE ALTERNATIVE, PLAINTIFFS REQUEST A HEARING ON PLAINTIFFS' EXPERTS QUALIFICATIONS PRIOR TO GRANTING DEFENDANTS' MOTION**

In the event the Court is inclined to grant Defendants' motion, Plaintiffs request a hearing so that the parties and the court can sufficiently examine Messrs. Fatzinger, Balash and Defoe as to their qualifications and foundation on these issues.  If the Court is inclined to grant this motion without a hearing, then Plaintiffs respectfully request that Defendants' motion be granted on a narrowly tailored basis, excluding only those portions of Plaintiffs' experts' opinions that Defendants take issue with.

**VII.   CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.  Alternatively, Plaintiff's request a hearing on Plaintiffs' Experts qualifications prior to granting Defendants' Motion.

DATED: August 13, 2021            KIESEL LAW LLP


                                  By:    */s/ D. Bryan Garcia*
                                  _____
                                  Paul R. Kiesel
                                  D. Bryan Garcia
                                  Ashley M. Conlogue

                                  Attorneys for Plaintiffs
                                  Armando Villanueva and Hortencia Sainz

OPPOSITION TO DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

2

3    DATED: August 13, 2021            LAW OFFICES OF DALE K. GALIPO

4

5

6                                      By:      */s/ Dale K. Galipo*
                                             Dale K. Galipo
7                                            Renee V. Masongsong

8
                                             Attorneys for Plaintiff
9                                            Francisco Orozco

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

OPPOSITION TO DEFENDANTS MOTION TO
                                                EXCLUDE EXPERT TESTIMONY

## <u>DECLARATION OF D. BRYAN GARCIA</u>

I, D. Bryan Garcia, hereby declare as follows:

1.     I am an attorney at law, duly licensed to practice before all Court in the State of California and the United States District Court for the Northern, Central and Southern Districts of California.  I am a partner with Kiesel Law LLP, counsel for Plaintiffs, Armando Villanueva and Hortencia Sainz in the above-captioned action.

2.     This Declaration is offered in support of Plaintiffs' Opposition to Defendants Motion to Exclude Expert Testimony. If called upon as a witness, I could and would competently testify to the following based on personal knowledge.

3.     The parties met and conferred as it relates to the documents marked Confidential by the Defendants which were to be attached to the present Motion. Defense counsel indicated that Plaintiffs' counsel could file the Exhibits to this Motion without filing the documents under seal.

4.     Attached hereto as Exhibit "1" is a true and correct copy of the Curriculum Vitae of Edward C. Fatzinger, Jr., M.S., P.E.

5.     Attached hereto as Exhibit "2" is a true and correct copy of the Curriculum Vitae of David E. Balash.

6.     Attached hereto as Exhibit "3" is a true and correct copy of the Curriculum Vitae of Scott A. DeFoe.

7.     Attached hereto as Exhibit "4" is a true and correct copy of the Federal Rule of Civil Procedure ("FRCP") Rule 26 Report of Edward C. Fatzinger, Jr., M.S., P.E.

8.     Attached hereto as Exhibit "5" is a true and correct copy of the Declaration of Edward C. Fatzinger, Jr., M.S., P.E. in Support of Plaintiffs' Opposition to Defendants Motion for Summary Judgment [D.E. 46].

9.     Attached hereto as Exhibit "6" is a true and correct copy of portions of the Deposition Testimony of Plaintiff Francisco Orozco.

10.     Attached hereto as Exhibit "7" is a true and correct copy of portions of

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1   the Deposition Testimony of Defendant Officer Rich Henderson.

2        11.    Attached hereto as Exhibit "8" is a true and correct copy of portions of

3   the Deposition Testimony of Thomas Hinkle.

4        12.    Attached hereto as Exhibit "9" is a true and correct copy of portions of

5   the Deposition Testimony of Lino Mendez.

6        13.    Attached hereto as Exhibit "10" is a true and correct copy of portions of

7   the Deposition Testimony of Augustine Estrada.

8        14.    Attached hereto as Exhibit "11" is a true and correct copy of portions of

9   the Deposition Testimony of Edward C. Fatzinger, Jr., M.S., P.E.

10        15.    Attached hereto as Exhibit "12" is a true and correct copy of portions of

11   the Deposition Testimony of Defendant Sergeant Jon Cleveland.

12        16.    Attached hereto as Exhibit "13" is a true and correct copy of the FRCP

13   Rule 26 Report of David E. Balash.

14        17.    Attached hereto as Exhibit "14" is a true and correct copy of the

15   Declaration of David E. Balash in Support of Plaintiffs' Opposition to Defendants'

16   Motion for Summary Judgment.

17        18.    Attached hereto as Exhibit "15" is a true and correct copy of portions of

18   the Officer Involved Shooting Investigation.

19        19.    Attached hereto as Exhibit "16" is a true and correct copy of portions of

20   the Deposition Testimony of David E. Balash.

21        20.    Attached hereto as Exhibit "17" is a true and correct copy of portions of

22   the Deposition Testimony of Rocky Edwards.

23        21.    Attached hereto as Exhibit "18" is a true and correct copy of the FRCP

24   Rule 26 Report of Scott A. DeFoe.

25        22.    Attached hereto as Exhibit "19" is a true and correct copy of the

26   Declaration of Scott A. DeFoe in Support of Plaintiffs' Opposition to Defendants'

27   Motion for Summery Judgment.

28        23.    Attached hereto as Exhibit "20" is a true and correct copy of portions of

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

the Deposition Testimony of Nekaya D. Cornelison.

24.     Attached hereto as Exhibit "21" is a true and correct copy of portions of the CHP Policy on Use of Firearms.

25.     Attached hereto as Exhibit "22" is a true and correct copy of portions of the CHP Policy on Use of Force.

26.     Attached hereto as Exhibit "23" is a true and correct copy of portions of the Deposition Testimony of Clarence Chapman.

27.     Attached hereto as Exhibit "24" is a true and correct copy of the Declaration of Francisco Orozco in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

28.     Attached hereto as Exhibit "25" is a true and correct copy of portions of the Deposition Testimony of Sergeant Richard Zavala.

29.     Attached hereto as Exhibit "26" is a true and correct copy of portions of the Interview of Rich Henderson.

30.     Attached hereto as Exhibit "27" is a true and correct copy of portions of the Deposition Testimony of Abel Orozco.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 13, 2021, at Beverly Hills, California.


_____*/s/ D. Bryan Garcia*_____
D. Bryan Garcia