

# DAVID E. BALASH

**FIREARMS EXAMINER • FORENSIC SCIENCE CONSULTANT**
41906 Echo Forest Ct. • Canton, Michigan 48188
Phone (734) 981-6788 • Fax (734) 981-6459

June 25, 2018

Mr. Bryan Garcia, Esq.
Kiesel Law
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910

RE:   Villanueva v. State of California

Mr. Garcia:

The following list of documents were used by the undersigned as source material for the opinions and conclusions expressed in this report.

- CHP Officer Involved Shooting Investigation
- CHP Scene Photographs
- CHP Shooting Victim Photographs
- Orange County Crime Laboratory Ballistics Report
- Orange County Crime Laboratory Photographs
- Orange county Crime Laboratory Chevrolet truck processing photographs
- Orange County Sheriff's Corner Report
- Statement of Sgt. Cleveland
- Statement of Officer Henderson
- Photographs of Francisco Orozco's injuries
- Rocky Edwards, Investigator's Report of 6/21/18

## QUALIFICATIONS FOR OPINION

The opinions and conclusions reached on the above-mentioned shooting are based on the following:

- My review of the above listed material.
- My experience as a Michigan State Police Officer for over 25 years rising to the rank of D/Lt. in charge of the Firearms, Tool-Mark and Bombs and Explosive Unit of the MSP Northville Forensic Science Laboratory
- My experience for over 20 years as a member of the Michigan State Police Forensic Science Laboratory in the Firearms Identification, Tool Mark, Bombs and Explosive Unit.
- My experience with the Michigan State Police as a Crime Scene Analyst participating in and supervising hundreds of crime scene investigations during my years with the department.
- My experience at photographing and collecting evidence at crime scenes while with the Michigan State Police.

1

- My experience at photographing, participating in and collecting evidence at autopsies for over 20 years.
- Training sessions on crime scene reconstruction both as a member of the Michigan State Police and as a civilian examiner.
- My experience in investigating shooting crime scenes for over 20 years as a member of the Michigan State Police and then continuing to utilize that experience as a self-employed examiner in assessing shooting crime scenes for the past 25+ years.
- My experience at having examined hundreds of shooting victims at crime scenes, autopsies, hospitals and funeral homes.
- My experience at taking and interpreting X-Ray's in bomb squad work and training as well as at using and interpreting X-Ray's at crime scenes, autopsies and hospitals for the past 45+ years.
- See a copy of my C.V. for more specific information

INFORMATION

The following is a brief description of the shooting event, according to the shooting officers, as understood by the undersigned.

California Highway Patrol Sgt J. Cleveland and Officer R. Henderson were teamed on a detail to curb dangerous driving exhibitions on public roadways. These officers were observing multiple examples of this type of driving and upon trying to apprehend one of the participants, a red Chevrolet pickup truck took off driving at very high speeds and disregarding traffic signals and control devices. The two CHP officers, with Sgt. Cleveland driving, began to pursue this vehicle with lights and siren activated in their undercover vehicle, however when the speeds were too excessive, they abandoned the pursuit, however continued to drive in the direction of the eluding vehicle.

The officers re-acquired the vehicle they were originally pursuing at the end of a cul-de-sac where the Chevrolet pickup truck was partially blocked in by the CHP undercover car. The truck made a U-turn, striking a parked vehicle and was facing the stopped CHP car. Both CHP officers exited their vehicle, weapons drawn, with each officer remaining near their respective open front car doors. Now as the Chevrolet began to drive toward where Sgt. Cleveland had been positioned, Officer Henderson began to fire his weapon at the truck while Sgt. Cleveland moved across the street or began to move away from his vehicle and he also fired his weapon at the truck. The truck ran into the CHP undercover car causing some/moderate damage. Mr. Villanueva was removed from the driver's side of the vehicle and was deceased at the scene.

COMMENTS AND OBSERVATIONS

In reviewing the Orange County Sheriff's Corner's report, it is apparent that Mr. Villanueva received three (3) substantial bullet wounds, which were listen in the autopsy protocol as wounds # 1, # 2 and # 3. The final numbered injury, listed as wound # 4, was a non-penetrating injury. The direction of wound # 1 to the head of Mr. Villanueva was listed as from back to front, right to left and downward. The direction of wound # 2 was listed as front to back, left to right and down. The direction of wound # 3 was listed as front to back, right to left and upward. The autopsy protocol lists three (3) different wound paths from three (3) different directions.

The bullet holes of entry found in the windshield of the Chevrolet truck are on the driver's side of the vehicle and could account for bullet wounds # 1 and # 2, however cannot be related to bullet wound # 3 in this examiner's opinion. The bullet strikes in the hood/fender of the pickup were not associated with the above 4 bullet injuries.

Bullet wound # 3 enters the right front/side chest of Mr. Villanueva and travels across/through his upper chest on an upward path where it terminates in the left rear shoulder area. This bullet wound could only have been inflicted by a bullet fired from the right (passenger's side) of the Chevrolet pickup truck.

There were two bullet strikes noted in the passenger side window and window/door frame of the truck Mr. Villanueva was driving with Mr. Orozco the front seat passenger. The bullet strike, marked "L", was in the passenger side door window and a second bullet strike, marked "M", located slightly lower and forward of the first listed strike which contacts both the window frame as well as the window glass.

The bullet recovered from wound # 3 and a bullet found on the passenger's side of the pickup in the front seat area, have both been identified by the Orange County Crime Laboratory as having been fired by Sgt. Cleveland's weapon. The two fired cartridge cases located in the scene photograph's approximately 8-10 feet in front of and slightly to the right side of the truck were also identified by the Orange County Crime Laboratory as having been fired in Sgt. Cleveland's weapon.

When viewing the scene photograph's as well as the photographs of the truck taken during processing, there are two (2) bullet strikes to the right front passenger door of the pickup, one in the glass of the door window only (L) and one (M) which strikes the window frame and the glass as well. Bullet strike (L) displays virtually no indications of having been fired at an angle, however bullet strike (M) displays a slight angle (forward) as observed by the undersigned. Both of these bullet strikes were caused by a firearm

3

being fired almost directly from the right side into the vehicle. The shooter, in this case Sgt. Cleveland, could not have been in front of the truck when these shots were fired, he would have to have been off to the side of the pickup, and in this examiner's opinion, close to the side door when the shots were fired, <u>if the shots were fired with the pickup truck in the position shown in scene photographs.</u>

The upper hole in the passenger side door window is consistent with bullet wound # 3 to Mr. Villanueva and the lower strike is consistent with the injury sustained to the right elbow of Mr. Orozco, in this examiner's opinion.

The Orange County Crime Laboratory properly preserved the evidence glass in the passenger side window and clearly identified all the firearms evidence with the respective firearms, however this examiner did not note anyone looking for gunpowder residue on the passenger side window, nor was there any ejection pattern testing done to either officer's firearm to assess the distribution of the fired cartridge cases noted at the scene or consider how the pickup caused the damage to the parked car and yet came to the position shown in scene photographs and then compare those results with the version of the shooting event being told to investigators by the shooting officers.

The undersigned noted 6 bullet strikes to the driver's side of the windshield and 5 bullet strikes to the hood/fender on the driver's side of the pickup truck which would account for 11 of the 12 shots reportedly fired by Officer Henderson. The officers at the scene removed the driver's side door window glass when removing Mr. Villanueva from the truck, therefore if the missing shot fired by Officer Henderson went through the door window glass, this evidence was destroyed at the scene.

OPINIONS AND CONCLUSIONS

In the opinion of the undersigned examiner the evidence and testing clearly indicate that both the bullet strike to the right side/chest area of Mr. Villanueva and the bullet wound to the right elbow area of Mr. Orozco were fired by Sgt Cleveland's service pistol while Sgt. Cleveland was positioned to the right side of the red Chevrolet pickup truck driven by Mr. Villanueva.

In reviewing the evidence photographs this examiner is of the opinion that Sgt Cleveland would have had to be positioned immediately right of the passenger front door and very near the front door when the shots attributed to his weapon were fired, <u>if the shots were fired when the pickup truck was in the position as shown in crime scene photographs.</u> The position of the vehicle as shown at the crime scene does not account for the shots fired by Officer Henderson in this scenario.

4

In viewing CHP photograph # 63/129 the undersigned estimates that the distance between the rear of the pickup and the damage to the parked car on the side of the road appears to be just over the length of the pickup truck itself, which has been listed as just over 17 feet in length. A conservative estimate of the distance between the rear of the pickup and the side of the damaged car would be 20 feet. The bullet strikes to the pickup truck attributed to Officer Henderson ALL appear to be from front to back in the hood and windshield (CHP vehicle processing photo # 202/226) of the truck, therefore the truck would have to have been facing Officer Henderson's position when these shots were fired. Officer Henderson fired 12 shots at the pickup truck essentially when the truck was mostly facing his position and most qualified officers, at best, are able to discharge their weapons between 3-4 rounds per second, therefore if the pickup truck only traveled approximately 20 feet from impact point to impact point and 11 of the 12 shots from Officer Henderson struck the pickup truck going from the front to the back, it would take Officer Henderson at least 3 seconds to fire his rounds while the truck only traveled 20 feet. This is hardly a high-speed vehicle assault in this examiner's opinion.

After careful review of the scene photographs (specifically CHP photo # 126/129 which clearly shows the positions of the vehicles and evidence) and the available evidence this examiner is of the opinion that the red Chevrolet pickup truck, driven by Mr. Villanueva, was at an angle to Sgt. Cleveland after striking the parked car with his right rear bumper and that Sgt. Cleveland was standing in the street somewhere between the center of the street and the curb (near the parked white sedan) firing his weapon at Mr. Villanueva's vehicle, which would have been somewhat sideways in the street at this time. This position would explain both the location of Sgt. Cleveland's fired cartridge cases at the scene and not require Sgt. Cleveland to be close to the pickup truck when these shots were fired. The pickup, being somewhat sideways in the street, also allows for the angle of impact from Officer Henderson's shots as well as the location of his fired cartridge cases recovered at the scene.

When viewing the angle of the pickup in it's final location with the front tires virtually straight and then examining the location of the damaged parked car reportedly just struck by the pickup and the distance between these two location, it is clear that the truck had to have turned and could not have been traveling at any substantial speed at the time of impact with the undercover vehicle considering the damage to both vehicles. If the vehicle is sideways to Sgt. Cleveland, obviously there would be no danger of him being struck by this truck.

The undersigned reserves the right to modify any of the conclusions or opinions expressed in this report if additional material or evidence is made available to be examined or reviewed.

Respectfully submitted,

David E. Balash

A copy of my C.V. is attached
A copy of my testimony document is attached
A copy of my fee document is attached.
I have not had any published articles in the past 10 years

6

KIESEL LAW LLP

JUN 29 2018