UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ARMANDO VILLANUEVA and HORTENCIA SAINZ, individually and as successor in interest to Pedro Villanueva, deceased, and FRANCISCO OROZCO, individually,<br><br>      Plaintiff,<br><br>  vs.<br><br>STATE OF CALIFORNIA; et al.,<br><br>      Defendants. | CASE NO: 8:17-cv-01302-JLS-KES |

VIDEOTAPED DEPOSITION OF CLARENCE R. CHAPMAN

Taken on

Monday, August 6, 2018

Amber Pilson, CSR 13992

```
 1           A    Always.
 2           Q    And you agree with that?
 3           A    Yes.
 4           Q    And it also talks about deadly force only
 5    being used in the direst of circumstances?
 6           A    I agree with that.
 7           Q    Okay.  And that's not only part of post
 8    standards, that's part of police officer training;
 9    is that fair?
10           A    Yes.
11           Q    And it also talks about the reverence for
12    human life which we've briefly spoke about already?
13           A    Correct.
14           Q    And also the post standards with respect to
15    the use of deadly force also talk about not using
16    deadly force if other reasonable measures are
17    available, and you generally agree with that?
18           A    Alternatives, yes.
19           Q    And one of the alternatives, I think, we
20    talked about in the context of a moving vehicle is
21    is to step out of the path if you can?
22           A    That's probably the best alternative.
23           Q    The post talks about giving a warning that
24    you're going to use deadly force when feasible?
25           A    When feasible, yes.  Yes.  If that warning
```

22

```
 1   can be perceived and understood by the individual,
 2   and there's enough time for the individual to comply
 3   with that warning.
 4       Q   An officer should, in part, consider the
 5   background when firing?
 6       A   It's called backdrop, yes.  Backdrop
 7   considerations and collateral damage is always
 8   tantamount in any decision to use firearms as a
 9   defensive method of force.
10       Q   The Post Learning Domain 20 talks about
11   subject fear alone being insufficient to use force
12   including deadly force?
13       A   Yes.  Subjective fear is basically that
14   fear of the officer has no foundation in any
15   objective condition that may occur at the time.  In
16   other words, just an individual being afraid of
17   something is not justification to use deadly force.
18       Q   Now, have you reviewed or seen cases
19   before, whether you've been retained or you've seen
20   a video on television or whatever it might be, where
21   you thought that the officers overreacted by using
22   deadly force?
23       A   Oh, yes.
24       Q   Okay.  And when an officer overreacts in
25   using deadly force would that be a, at least in your
```

23

```
 1  fleeing?
 2      A   No.  I think that's what I'm talking about.
 3  I think there's not only policy, but there's --
 4  there's some case law against shooting at motor
 5  vehicles that are fleeing.  I know the California
 6  Highway Patrol actually has a policy that thou will
 7  not shoot vehicles fleeing on a freeway --
 8      Q   Right.
 9      A   -- for purposes of apprehension.
10      Q   And you, as part of the materials you
11  reviewed in this case, you reviewed the depositions
12  of the involved officers?
13      A   Yes.  Sergeant Cleveland and
14  Officer Henderson.
15      Q   Right.  And did you note in -- in their
16  testimony that either one or both of them indicated
17  that, based on their training, you couldn't shoot
18  this vehicle simply for fleeing under the facts of
19  this case?
20      A   And I think they both testified under oath
21  if Mr. -- if the driver had driven around them, they
22  would have let him go.
23      Q   Okay.  Do you agree with that, generally,
24  that under the facts of this case, you cannot use
25  deadly force by shooting the driver just for
```

25

```
 1  fleeing?
 2      A   Not only do I agree, I think they were
 3  well-trained officers to understand that policy or
 4  the aspect of that policy.
 5      Q   Okay.  Are -- are officers generally taught
 6  to assess during a shooting sequence when they can,
 7  and what I mean by that is I know sometimes it may
 8  be difficult to assess with every shot, obviously,
 9  but I know back in the day there was some training
10  with the County either to take two or three shots
11  and assess.
12          Do you recall that general training?
13      A   Well, that is training.  That's not
14  real-life scenario, and it has nothing to do with
15  policy and defensive force in the face of a deadly
16  threat, but that is training.  That is training.
17      Q   Okay.  What --
18      A   It's a training scenario, and it's actually
19  written up, and it's called a "failure drill" where
20  you can either take two shots to the body, one to
21  the head, you reassess; two shots to the head, one
22  to the body, you reassess.  It's a training drill.
23  It's not a prescription for how officers are to
24  perform in the field, and I think that's a very
25  important distinction.
```

26

```
 1        A   I believe it was in 2001/2002.
 2        Q   Okay.  So in terms of the concept -- we've
 3   talked about this before too -- the acronym IDL,
 4   Immediate Defense of Life?
 5        A   Yes.
 6        Q   So in terms of a moving vehicle, I guess,
 7   the immediate or imminent threat of death or serious
 8   bodily injury would, in that context, would be the
 9   vehicle striking or -- or hitting the officer; is
10   that --
11        A   That's a fair statement.
12        Q   Okay.  So in order for there to be, based
13   on the police training and standards, a
14   justification to use deadly force against the driver
15   of a vehicle, you would need the immediate or
16   imminent threat of death or serious bodily injury,
17   and you would need a scenario where the officer
18   cannot get out of the path of the vehicle?
19            In other words, you would need the
20   imminency of the threat, and if you can look back to
21   Exhibit 1 for a second -- do you still have that?
22        A   Yes, I do.
23        Q   So I'm looking about two thirds of the way
24   down.  It says "A Department member shall not
25   discharge a firearm at a motor vehicle or its
```

29

```
 1   occupants in response to a threat posed solely by
 2   the vehicle unless the member has an objectively
 3   reasonable belief that" -- and then it has two
 4   bullet points:  The first one, "The vehicle or
 5   suspect poses an immediate threat of death or
 6   serious physical injury to the Department member or
 7   another person," and then it has an "and"
 8   underlined, "the Department member has no reasonable
 9   alternative course of action to prevent the death or
10   serious physical injury."
11             Is that your general understanding of the
12   training with respect to shooting at a moving
13   vehicle?
14        A    Yes, sir.
15        Q    Okay.  So you would need the immediate
16   threat of death or serious bodily injury and no
17   reasonable alternative course of action such as
18   stepping out of the path?
19        A    Very fair statement, yes.
20        Q    Okay.  And is it your understanding that
21   the -- the CHP policy is generally consistent with
22   the principles we've been talking about with respect
23   to the use of deadly force and shooting at moving
24   vehicles?
25        A    Absolutely.
```

30

```
 1  STATE OF CALIFORNIA    )
                           ) ss.
 2  COUNTY OF LOS ANGELES  )

 3

 4

 5

 6

 7

 8

 9

10          I, CLARENCE R. CHAPMAN, say I have read the

11  foregoing deposition and declare under penalty of

12  perjury that the foregoing is true and correct; that

13  I have made any corrections as appear noted, in ink,

14  initialed by me.

15          EXECUTED this_____day of_____,

16  2018, at_____,_____.
                     (City)                    (State)
17

18

19          _____
                       CLARENCE R. CHAPMAN
20

21

22

23

24

25
                                                            106
```

```
 1  STATE OF CALIFORNIA  )
                        ) ss.
 2  COUNTY OF LOS ANGELES)

 3

 4          I, Amber Pilson, Certified Shorthand

 5  Reporter License No. 13992, for the State of

 6  California, do hereby certify:

 7          That, prior to being examined, the witness

 8  named in the foregoing deposition, to wit, CLARENCE

 9  R. CHAPMAN, was by me duly sworn to testify to the

10  truth, the whole truth, and nothing but the truth;

11          That said deposition was taken down by me

12  in shorthand at the time and place therein named and

13  thereafter reduced to computer-aided transcription

14  under my direction;

15          That the foregoing transcript, as typed, is

16  a true record of the said proceedings.

17          I further certify that I am not interested

18  in the event of the action.

19

20          WITNESS my hand this 8th day of August,

21  2018.

22

23          _____
                    Amber Pilson, CSR NO. 13992
24

25
```

107